## A01A0283. GARY v. STATE OF GEORGIA.
(549 SE2d 826)

BLACKBURN, Chief Judge.

Following a bench trial in a civil forfeiture proceeding, the court determined that a Ford F-250 wrecker and $2,164 in U. S. currency were forfeited to the State. The trial court, however, enjoined the State from enforcing the judgment until completion of the appellate process. Kirby Gary filed this appeal to contest the legality of the search of his truck during which plastic bags containing 68.4 grams of methamphetamines were discovered. For the reasons set forth below, we affirm.

In a civil forfeiture proceeding, the trial court sits as the trier of fact, and its findings will not be disturbed if there is any evidence to support them. See OCGA § 16-13-49 (o) (5), (p) (6); *Lyon v. State of Ga.*[1] In this case, the evidence established that, while conducting a routine DUI/license checkpoint, police officers observed a white wrecker suddenly veer off into a private driveway located just short of the roadblock. According to Sergeant D. G. Thomas, as he heard a vehicle approaching and looked over to his left, "all of a sudden, it slammed on its brakes and made an abrupt stop. You could hear — I mean, it was obvious he was making a hard stop and turned into a driveway." Deputy Sheriff Thomas Trudnak also saw the truck turn "sharply" and "very abruptly" into a driveway. From where he was standing, Trudnak was able to see that the driver did not use a turn signal and that the rear of the car being towed did not have any tow lights affixed. Based on his opinion that the wrecker was trying to avoid the traffic checkpoint, Trudnak decided to investigate further. After requesting to see Gary's driver's license and insurance card, Trudnak asked Gary why he had turned into the driveway. Gary said that he was going to see his father-in-law, who, in fact, lived there. After verifying Gary's license, Trudnak called dispatch to check the insurance information because neither the wrecker nor Gary's name appeared on the insurance card. Trudnak noticed that Gary seemed "very nervous" and acted like his truck was a "hot potato." Trudnak explained, that in his experience, when a vehicle contains contraband, drivers will distance themselves from that vehicle and seem to want to disown it. Trudnak noted that Gary would neither look at his truck nor go near it. Although he had never previously met Gary, Trudnak testified that a week earlier, a confidential informant had "fingered Gary as the person supplying the drugs." Based on his personal observations of Gary's conduct, as well as all the information he had, Trudnak "suspected that something was wrong."

---

[1] *Lyon v. State of Ga.*, 230 Ga. App. 264 (495 SE2d 899) (1998).

After issuing a traffic citation, Trudnak asked Gary if he "would have a problem with me searching his vehicle." When Gary refused to consent to a search, Trudnak's supervising officer, Sergeant Thomas, called a nearby K-9 officer to the scene. Almost immediately, the drug dog alerted on the driver's side door of the wrecker. A total of approximately 15 to 20 minutes had elapsed from the arrival of Trudnak to the arrival of the K-9 unit. After watching the dog give a positive alert, Sergeant Thomas informed Gary that his truck would have to be searched. Behind the driver's seat was a black nylon bag containing methamphetamines. Investigators also discovered $2,164 in cash in Gary's wallet.

1. Gary contends that the trial court erred by failing to conclude that the warrantless detention and search of his vehicle were impermissibly and unreasonably expanded without probable cause and without articulable suspicion.

To justify additional questioning of a driver and the search of a vehicle following a routine traffic stop, an officer must have reasonable suspicion of criminal conduct. *Parker v. State.*[2] In order to meet the "reasonable suspicion" standard, an officer's investigation during a traffic stop must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. Id. at 618. "Articulable suspicion requires a particularized and objective basis for suspecting that a citizen is involved in criminal activity." *State v. Causey.*[3] While this suspicion need not meet the standard of probable cause, it must be more than mere caprice or a hunch or an inclination. See *Parker,* supra.

Here, uniformed officers manning a checkpoint observed a driver suddenly brake and turn his vehicle into a driveway just short of their checkpoint. Prior to the abrupt turn, the driver had not used a turn signal, and his rear vehicle lacked tow lights. After witnessing these traffic violations, Deputy Trudnak was plainly authorized to stop Gary. See *Buffington v. State.*[4] Subsequently, during the investigatory stop, Trudnak noticed Gary's nervousness. In addition, Trudnak knew that a confidential informant recently had identified Gary as a supplier of methamphetamines. Collectively, these facts, including Gary's apparent effort to avoid the checkpoint, formed a sufficient, reasonable basis for Trudnak to believe that Gary was transporting illegal drugs or was otherwise engaged in criminal conduct of some sort that would warrant further investigation. See *State of Ga. v. Montford.*[5] The period of detention while waiting for the

---

[2] *Parker v. State,* 233 Ga. App. 616, 617-618 (1) (504 SE2d 774) (1998).
[3] *State v. Causey,* 246 Ga. App. 829, 831 (1) (540 SE2d 696) (2000).
[4] *Buffington v. State,* 229 Ga. App. 450, 451 (494 SE2d 272) (1997).
[5] *State of Ga. v. Montford,* 217 Ga. App. 339, 340-341 (1) (457 SE2d 229) (1995).

drug dog was minimal. The officers were authorized to walk the drug dog around Gary's truck to see whether the dog detected the odor of drugs. *Edwards v. State.*[6]

2. Gary contends that the trial court erred in determining that based on the totality of the circumstances, probable cause existed to search his vehicle. On the contrary, the drug dog's alert to the exterior of the vehicle established probable cause to search the truck. *Roundtree v. State.*[7]

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED JUNE 6, 2001.

*Daniels & Rothman, Jeffery A. Rothman*, for appellant.

*Timothy G. Madison, District Attorney, Robin R. Riggs, Assistant District Attorney*, for appellee.

---

[6] *Edwards v. State*, 239 Ga. App. 44, 46 (1) (518 SE2d 426) (1999).

[7] *Roundtree v. State*, 213 Ga. App. 793, 794-795 (446 SE2d 204) (1994).