## A02A2062. BELVIN v. STATE OF GEORGIA.
(575 SE2d 707)

JOHNSON, Presiding Judge.

Mary Belvin appeals from the order of the superior court which forfeited $10,000 cash to the state under the authority of OCGA § 16-13-49. Belvin contends that the evidence was insufficient to support a determination that the currency was subject to forfeiture. Specifically, she asserts that the money was lawfully obtained, that she knew nothing about either the marijuana on her property or her husband's alleged attempt to use the money to bribe the sheriff in connection with the drug charges, and that the state failed to prove that the money was intended for use to facilitate a violation of the Georgia Controlled Substances Act.[1] Because Mary Belvin lacks standing to challenge the forfeiture of the money, we affirm the judgment.

The evidence shows that police officers found marijuana growing on land owned by Mary Belvin and leased to Charles Hughes. The plants were about 15 feet tall and weighed over 380 pounds. Mary Belvin and her husband, Oscar Belvin, lived on a farm across the road from the property leased by Hughes.

While investigating the marijuana farm on the rental property, officers noticed a soaker hose and pipes running from a well on Mary Belvin's property to the property across the road on which the marijuana was growing. A search of Mary Belvin's farm revealed marijuana in her husband's truck, on the ground near her farm office, inside the farm office, in a mulcher, and in semi-tractor-trailers parked near the farm buildings. Oscar Belvin was arrested and charged with several crimes, including the manufacture of marijuana.

While in police custody, Oscar Belvin allegedly offered the sheriff $10,000 cash and payments for several years thereafter if the sheriff would help him get out of jail on bond. The sheriff notified the Georgia Bureau of Investigation, and a plan was devised to catch Oscar Belvin bribing the sheriff.

Oscar Belvin telephoned Mary Belvin and told her he needed $10,000 cash to pay an attorney. Mary Belvin requested and received rent money in that amount from her tenant, Hughes. The same day, Mary Belvin called her husband and told him she had the money. The

---

[1] See OCGA § 16-13-49 (d) (2), (6).

sheriff drove Oscar Belvin home to retrieve the money. Without speaking, Mary Belvin approached the sheriff's car and handed the money either to the sheriff, who immediately passed it to Oscar Belvin, or directly to her husband. Oscar Belvin kept the money until the men arrived at the sheriff's office, where he handed the money to the sheriff. Oscar Belvin was then charged with bribery, and the money was seized.

The state filed an action for forfeiture against the money, naming Oscar Belvin as the purported owner. The complaint alleged that the property was directly or indirectly used or intended for use to facilitate a violation of OCGA § 16-13-30, or was proceeds derived or realized from a violation of OCGA § 16-13-30. Mary Belvin filed a response, asserting that the money was hers, that it was derived from property rental, that she gave the sheriff the money so he would post a cash bond for her husband, and that the money was not intended for use in or derived from any violation of the law. The trial court found that Mary Belvin lacked standing to contest the forfeiture because she relinquished her right to the money when she gave it to Oscar Belvin. The trial court properly rejected Mary Belvin's contention that she was an owner of or held an interest in the money seized.

To have standing to contest a forfeiture, a party must have at least some property interest in the subject matter of the condemnation proceeding.[2] If a person has no interest in the property, she cannot very well be heard to complain of its forfeiture; as a stranger to it, she is a mere member of the public volunteering to challenge the entitlement of the state to the property.[3] The statutory procedure contained in OCGA § 16-13-49 makes no provision for such a challenge, and it must be strictly construed.[4] In a civil forfeiture proceeding, the trial court sits as the trier of fact, and its findings will not be disturbed if there is any evidence to support them.[5]

Here, Mary Belvin obtained the money at her husband's request and handed the money either to her husband or to the sheriff, who immediately passed it to Oscar Belvin. The fact that Oscar Belvin did not spend the money in the manner in which Mary Belvin thought he would does not negate the fact that she relinquished control of the money. This Court has held that even though funds may be loaned for a particular purpose, a creditor has no right to exercise dominion or control over the money once lent, and the creditor lacks standing to

---

[2] *Holmes v. State of Ga.*, 233 Ga. App. 872 (506 SE2d 157) (1998); see OCGA § 16-13-49 (n) (3), (o) (3).

[3] *Holmes*, supra.

[4] Id.

[5] *Gary v. State of Ga.*, 249 Ga. App. 879 (549 SE2d 826) (2001).

challenge a forfeiture action against the currency.[6] And we have cited with approval federal authority finding parents lacked a cognizable interest in seized currency they gave to their son to finance an oil venture.[7] In this case, we hold that once Mary Belvin gave Oscar Belvin the money, she lost her interest in it. We point out that the family relationship between the Belvins does not create an interest in the property.[8]

We are not convinced by Mary Belvin's contention that she was a bailor of the cash and the sheriff was a bailee, and that therefore she retained her interest in the money.[9] Although she argues that she handed the money to the sheriff for the sheriff to pay an attorney, and that the sheriff served as a mere "conduit," she testified that she obtained the money for her husband, that she handed the money to her husband, and that she said nothing as she handed over the money. Thus, there is evidence to support the trial court's finding that she gave the money to her husband.

The burden was on Mary Belvin to establish her claim to the currency.[10] She has not met this burden. Accordingly, Mary Belvin's lack of standing precludes us from considering her claim that the state failed to meet its burden of showing by a preponderance of the evidence that the cash was subject to forfeiture.[11]

*Judgment affirmed. Blackburn, C. J., and Miller, J., concur.*

DECIDED DECEMBER 10, 2002

*F. Robert Raley*, for appellant.
*Cecilia M. Cooper, District Attorney, Robert G. Dunn III, Assistant District Attorney*, for appellee.

---

[6] *Crenshaw v. State of Ga.*, 206 Ga. App. 271, 272 (1) (425 SE2d 660) (1992).

[7] See id., citing *United States v. $47,875.00 in U. S. Currency*, 746 F2d 291, 293-294 (5th Cir. 1984).

[8] See *Allmond v. State of Ga.*, 202 Ga. App. 902, 903 (415 SE2d 924) (1992).

[9] See *Lawrence v. State of Ga.*, 231 Ga. App. 739, 740 (501 SE2d 254) (1998) (a bailee has a possessory interest in bailed property and has standing to contest property).

[10] See *Hill v. State of Ga.*, 178 Ga. App. 563, 565 (2) (343 SE2d 776) (1986).

