A04A0248. GARY v. THE STATE.
(603 SE2d 304)

BARNES, Judge.

Kirby Gary appeals his convictions for trafficking in methamphetamine and possession of methamphetamine with the intent to distribute. He contends the trial court erred by denying his motion to suppress the evidence seized from his tow truck by deputy sheriffs.

On appeal, Gary contends the trial court erred by denying the motion to suppress because the deputies lacked a reasonable articulable suspicion to stop him, as he had committed no traffic offense in

[3] *Reid v. City of Hogansville*, 202 Ga. App. 131, 132 (413 SE2d 457) (1991).
[4] OCGA § 51-1-1.
[5] *McPetrie v. State*, 263 Ga. App. 85 (587 SE2d 233) (2003).

their presence and they had no other reason to suspect him of criminal activity. He also contends the deputy had no articulable suspicion to detain him after the traffic stop and he refused to consent to the search, and that the roadblock was unconstitutional because its primary purpose was ordinary crime prevention. Finding no error, we affirm.

1. When we review

a trial court's decision on a motion to suppress, this court's responsibility is to ensure that there was a substantial basis for the decision. The evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them.

(Citations omitted.) *Morgan v. State*, 195 Ga. App. 732, 735 (3) (394 SE2d 639) (1990). When the evidence is uncontroverted and no question of witness credibility is presented, "the trial court's application of the law to undisputed facts is subject to de novo appellate review. [Cits.]" *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). To the extent this issue concerns mixed questions of fact and law, we will accept the trial court's findings on disputed facts and witness credibility unless they are clearly erroneous, but independently apply the law to the facts. *Morrow v. State*, 272 Ga. 691, 693 (1) (532 SE2d 78) (2000).

So viewed, the evidence shows that deputy sheriffs from the Sheriff's Criminal Apprehension Team ("SCAT") were operating a "DUI, license, and insurance check" on a county road. The deputies were in uniform and had patrol cars on the side of the road with their blue lights on. The checkpoint had been approved by Sergeant Thomas, SCAT's supervisor, and they were stopping every car that came through.

Sergeant Thomas testified that he selected the site for the checkpoint because the road was a "cut-through" between two major highways that was used by a lot of people. According to Sergeant Thomas they had received numerous reports of burglaries, theft, and drugs in the area as well as information about drug activity from Gary's garage.

The underlying facts are stated in *Gary v. State of Ga.*, 249 Ga. App. 879 (549 SE2d 826) (2001), our opinion reviewing the civil asset forfeiture case arising from this incident:

[The deputies] observed a white wrecker suddenly veer off into a private driveway located just short of the roadblock. According to Sergeant D. G. Thomas, as he heard a vehicle approaching and looked over to his left, "all of a sudden, it slammed on its brakes and made an abrupt stop. You could hear — I mean, it was obvious he was making a hard stop and turned into a driveway." Deputy Sheriff Thomas Trudnak also saw the truck turn "sharply" and "very abruptly" into a driveway. From where he was standing, Trudnak was able to see that the driver did not use a turn signal and that the rear of the car being towed did not have any tow lights affixed. Based on his opinion that the wrecker was trying to avoid the traffic checkpoint, Trudnak decided to investigate further. After requesting to see Gary's driver's license and insurance card, Trudnak asked Gary why he had turned into the driveway. Gary said that he was going to see his father-in-law, who, in fact, lived there. After verifying Gary's license, Trudnak called dispatch to check the insurance information because neither the wrecker nor Gary's name appeared on the insurance card. Trudnak noticed that Gary seemed "very nervous" and acted like his truck was a "hot potato." Trudnak explained, that in his experience, when a vehicle contains contraband, drivers will distance themselves from that vehicle and seem to want to disown it. Trudnak noted that Gary would neither look at his truck nor go near it. Although he had never previously met Gary, Trudnak testified that a week earlier, a confidential informant had "fingered Gary as the person supplying the drugs." Based on his personal observations of Gary's conduct, as well as all the information he had, Trudnak "suspected that something was wrong."

After issuing a traffic citation, Trudnak asked Gary if he "would have a problem with me searching his vehicle." When Gary refused to consent to a search, Trudnak's supervising officer, Sergeant Thomas, called a nearby K-9 officer to the scene. Almost immediately, the drug dog alerted on the driver's side door of the wrecker. A total of approximately 15 to 20 minutes had elapsed from the arrival of Trudnak to the arrival of the K-9 unit. After watching the dog give a positive alert, Sergeant Thomas informed Gary that his truck would have to be searched. Behind the driver's seat was a black nylon bag containing methamphetamines.

Id. at 879-880.

The deputy was not sure if other cars were on the road when Gary turned into his father-in-law's driveway. He approached Gary to investigate why he turned off and to issue a citation because of Gary's failure to use his turn signal lights and tow lights. He further testified that the roadblock also was set up because they had heard of drugs in the area.

After conducting a new hearing on the motion to suppress because of changes in the law concerning roadblocks announced in our decision in *Baker v. State*, 252 Ga. App. 695 (556 SE2d 892) (2001), the trial court denied Gary's motion to suppress. The trial court found that it did not consider the roadblock significant, and denied the motion because he found that the deputies were authorized to stop Gary because of his abrupt turn and the lack of tow lights.

2. Although Gary challenges the legality of the roadblock, we need not consider this contention because the evidence shows that he was not stopped at the roadblock. Instead, the evidence shows that Gary turned in his father-in-law's driveway and the deputy stopped him in the yard. We agree with the trial court's conclusion that the legality of the roadblock is simply not significant to the issue of whether the methamphetamine should have been suppressed.

The trial court correctly ruled that the deputies' actions were warranted because of their good faith belief that Gary had violated the law by turning without using his turn signal and by failing to have tow lights on the vehicle he was towing. This basis, particularly when coupled with the manner in which Gary turned in to the driveway, was sufficient to give the deputies reasonable suspicion to stop Gary. "[A]bnormal or unusual actions taken to avoid a roadblock may give an officer a reasonable suspicion of criminal activity even when the evasive action is not illegal. By contrast, completely normal driving, even if it incidentally evades the roadblock, does not justify a *Terry*-type 'tier-two' stop." (Footnotes omitted.) *Taylor v. State*, 249 Ga. App. 733, 735 (549 SE2d 536) (2001). " '[R]easonable suspicion of criminal activity warrants a temporary seizure for the purpose of questioning limited to the purpose of the stop.' [Cits.]" *Jones v. State*, 187 Ga. App. 421, 423 (370 SE2d 784) (1988). Further,

> [a]lthough an officer's honest belief that a traffic violation has actually been committed in his presence may ultimately prove to be incorrect, such a mistaken-but-honest belief may nevertheless demonstrate the existence of at least an articulable suspicion and reasonable grounds for the stop.

(Citation and punctuation omitted.) *State v. Webb*, 193 Ga. App. 2, 4 (1) (386 SE2d 891) (1989). We reject Gary's argument that allowing *Terry* stops like this is somehow an adoption of the good faith

exception to the exclusionary rule. The good faith exception, recognized by the United States Supreme Court in *United States v. Leon*, 468 U. S. 897, 905 (I) (104 SC 3405, 82 LE2d 677) (1984), but rejected by our Supreme Court in *Gary v. State*, 262 Ga. 573 (422 SE2d 426) (1992), is concerned with searches authorized by defective warrants. Id. at 574. Here, of course, we are concerned with *Terry* stops, an entirely different constitutional concept. Accordingly, Gary's enumerations of error challenging the roadblock and his initial stop by the deputy are without merit.

3. Gary's last enumeration of error contends the trial court erred by denying his motion to suppress because the deputy had no articulable suspicion to detain him after the traffic stop and he had refused to consent to the search of his truck. We disagree. While it is true that a police officer can improperly expand the scope of an authorized stop to the point that a subsequent search and seizure would be unlawful, see *Daniel v. State*, 277 Ga. 840 (597 SE2d 116) (2004), this is not such a case.

*Daniel v. State* recognized that although "[a]n investigative detention usually must last no longer than is necessary to effectuate the purpose of the stop, and the scope of the detention must be carefully tailored to its underlying justification . . . , it does not automatically follow that any further detention for questioning is unconstitutional." (Citation and punctuation omitted.) Id. at 841 (1). Thus, continued questioning by law enforcement officers is authorized "either when the officer has a reasonable articulable suspicion of other illegal activity or when the valid traffic stop has de-escalated into a consensual encounter." Id. at 841-842 (1).

In this case, we find that the deputy had a reasonable articulable suspicion that Gary might be in possession of drugs to warrant further detention and questioning. The deputy knew that reports had been received that Gary was the source of drugs in the area, that Gary engaged in evasive tactics to avoid the roadblock, that Gary was extremely nervous, and that during the questioning legitimately associated with the traffic stop, Gary had acted in a manner which according to the deputy's training and experience indicated that drugs might be in the tow truck.

Given this information, the trial court did not err by concluding that the deputy was authorized to detain Gary for further investigation. "[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio*, 392 U. S. 1, 22 (III) (88 SC 1868, 20 LE2d 889) (1968). Thus, the trial court did not err by denying Gary's motion to suppress on this basis.

*Judgment affirmed. Mikell, J., concurs. Blackburn, P. J., concurs in judgment only.*

DECIDED JULY 6, 2004 —
RECONSIDERATION DENIED JULY 28, 2004 — ▮▮▮▮▮▮

*James W. Smith, Earl D. Clark, Jr.,* for appellant.
*Timothy G. Madison, District Attorney, Robin R. Riggs, Assistant District Attorney,* for appellee.