## A98A0367. SHAPIRO v. THE STATE.
(504 SE2d 719)

ANDREWS, Chief Judge.

Suzanne Marie Daugherty Shapiro appeals from the judgment entered on her nonjury conviction for DUI, habitual violator, and violating the Georgia Controlled Substances Act, contending that her motion to suppress[1] was improperly denied.

1. Because the evidence regarding the stop of Shapiro was undisputed, the trial court's application of the law to these facts is subject to de novo appellate review. *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

Lilburn Officer Worley was assisting Officer Brown on a traffic stop around midnight at the intersection of Highway 29 and Killian Hill Road. He received a dispatch giving a lookout for a gold Acura with a white female driving northbound on Killian Hill Road, suspected of drunk driving.

Officer Worley waited, facing west at the intersection with the north bound lanes of Killian Hill Road. Less than a minute after the lookout, a gold Acura driven by a white female (later identified as Shapiro) approached northbound and stopped in the right lane at the intersection's red light. She then went through the intersection on the green light and Officer Worley pulled in behind her and followed her for approximately a half mile. She committed no traffic offenses, but he did observe her "weaving in her lane." He then activated his blue lights because the "vehicle fit the description given out by radio of her driving, weaving in her lane. I felt that this was the vehicle that the look-out was given on."

Shapiro traveled on another half mile and then stopped in the right lane of traffic after the officer activated his siren. As he was calling in his location, Shapiro got out of her car, stuck out her hands with her wrists together and said, "You've got me. I'm ready to go to jail." Officer Worley requested her license and insurance and Shapiro advised that her license was suspended. Her eyes were glassy and red and there was a strong odor of alcohol. She refused to do any field tests or to perform a breath test. After she was arrested, another officer discovered a Tylenol bottle containing crack cocaine in the Acura.

2. "Although an officer may conduct a brief investigative stop of a vehicle (see *Delaware v. Prouse*, 440 U. S. 648 (99 SC 1391, 59 LE2d 660) (1979)), such a stop must be justified by 'specific and articulable facts which, taken together with rational inferences from those facts,

---

[1] To the extent that the motion sought to prevent the arresting officers' testimony, it is more aptly described as a motion in limine. *McClain v. State*, 226 Ga. App. 714, 715 (1) (487 SE2d 471) (1997).

reasonably warrant that intrusion.' *Terry v. Ohio*, 392 U. S. 1, 21 (88 SC 1868, 20 LE2d 889) (1968). See also *United States v. Brignoni-Ponce*, 422 U. S. 873 (95 SC 2574, 45 LE2d 607) (1975). The U. S. Supreme Court recognized the difficulty in defining 'the elusive concept of what cause is sufficient to authorize police to stop a person,' and concluded that the essence of the elusive concept was to take the totality of the circumstances into account and determine whether the detaining officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.' *United States v. Cortez*, 449 U. S. 411, 417-418 (101 SC 690, 66 LE2d 621) (1981). 'This demand for specificity in the information upon which police action is predicated is the central teaching of (the Supreme Court's) Fourth Amendment jurisprudence.' *Terry v. Ohio*, supra at 21, n. 18." *Vansant*, supra at 320 (2).

In *Thomason v. State*, 268 Ga. 298, 301, fn. 9 (486 SE2d 861) (1997), the Supreme Court noted that "a *particularized description* of a suspect vehicle may, *in addition to other factors*, provide the requisite basis for an investigative stop by police." (Emphasis supplied.)

Here, Officer Worley had received information from the police dispatcher that a gold Acura driven by a white female suspected of drunk driving was headed in his direction. Within moments, such a vehicle appeared, heading in the direction noted and driven by a white female. There was no other traffic in the area other than the car stopped earlier and the car of the other officer involved in that stop. Based on the totality of these circumstances, Officer Worley properly initiated an investigatory stop.

This case is factually similar to *Thomason*. There, officers in a county adjoining the one where the murder occurred heard a lookout for a 1978 or 1979 brown Oldsmobile Cutlass with a lighter brown top, driven by a white male. This description was sufficient to justify an investigatory stop, as was that given here. Compare *Vansant*, supra (officer would have stopped any white van seen, stop not justified) with *Hestley v. State*, 216 Ga. App. 573, 574 (455 SE2d 333) (1995) (description given of a white panel van without many windows believed to be a Chevrolet justified stop) and *Philpott v. State*, 194 Ga. App. 452 (1) (390 SE2d 664) (1990) (dispatch regarding dark-colored Camaro with lights around its tag justified stop).

3. Shapiro also claims error in the court's admission over objection of State's Exhibits 3 and 4, consisting of the Department of Public Safety's (Exhibit 3) Official Notice of Revocation and (Exhibit 4) Official Notice of Revocation and Service By Court. She contends the documents were hearsay and violated her right to confrontation, based on *Miller v. State*, 266 Ga. 850 (472 SE2d 74) (1996).

Both documents contain the certification of the department's custodian as provided for in OCGA § 40-5-2 (d) (1). When so certified,

such records "shall be admissible as evidence in any civil or criminal proceeding as proof of the contents thereof." Id.

Neither is this case comparable to *Miller*, where an opinion regarding the analysis of a substance by the GBI Division of Forensic Sciences was involved and found to violate the right to confrontation. Instead, it is controlled by *Price v. State*, 269 Ga. 222 (498 SE2d 262) (1998) and *Brown v. State*, 268 Ga. 76 (485 SE2d 486) (1997). Those two cases rejected such a claim with regard to statutory certifications used to prove the qualifications of one drawing blood under OCGA § 40-6-392 (e) and whether an Intoxilyzer was properly inspected pursuant to OCGA § 40-6-392 (f).

Here, as in *Price*, the records at issue are public records which allow a court to "infer reliability when the hearsay falls within a firmly rooted exception to the hearsay rule, such as the public records exception." *Price*, supra at 223. See also *Gill v. Bowman*, 201 Ga. App. 308 (410 SE2d 780) (1991); *Love v. Hardison*, 166 Ga. App. 677 (305 SE2d 420) (1983).

Therefore, there was no error in admitting these records.

*Judgment affirmed. Blackburn and Eldridge, JJ., concur.*

DECIDED JULY 15, 1998 —
RECONSIDERATION DENIED JULY 29, 1998 —

*Spruell, Taylor & Associates, Billy L. Spruell, Melinda D. Taylor*, for appellant.

*Daniel J. Porter, District Attorney, R. Keith Miles, Assistant District Attorney*, for appellee.