## A99A1366. McSWAIN et al. v. THE STATE.
### (522 SE2d 553)

RUFFIN, Judge.

After stopping a vehicle driven by Dexter McSwain, police discovered cocaine in the trunk. McSwain and his three passengers, Antonio Stepps, Toriono Lawson, and Eric Easter, were arrested and charged with trafficking in cocaine.[1] The defendants moved to suppress the evidence obtained in the search of the vehicle, but the trial court denied their motion. McSwain and Stepps appeal, asserting that the police lacked reasonable suspicion to initiate the traffic stop.[2] As explained more fully below, we reverse.

The uncontroverted evidence presented at the suppression hearing follows. On the afternoon of October 10, 1995, Corporal Clay Kicklighter of the Georgia State Patrol ("GSP") was monitoring traffic on I-95 in McIntosh County when he heard the Brunswick GSP post announce over the radio that GSP units in Camden and McIntosh Counties should be on the lookout for a vehicle headed northbound on I-95 from Florida to North or South Carolina. The dispatcher described the vehicle as a light green, four-door Honda Accord occupied by four black males, gave the vehicle's license plate number, and stated that there was "possibly some contraband" in the trunk. The dispatcher also gave names for the vehicle's occupants, but Kicklighter did not write the names down and, with the exception of Easter, did not remember them at the suppression hearing. No further details were provided.

About an hour later, Kicklighter saw a vehicle that matched the description and contained four black males traveling north on I-95. Kicklighter followed the vehicle for approximately one mile, but saw no traffic violations or other criminal activity. He then pulled the vehicle over based solely on the radio lookout. He asked the driver — later identified as McSwain — to step out of the car and produce his driver's license, at which point McSwain told him that his driver's license had been suspended. Kicklighter detected the odor of burnt marijuana on McSwain's clothing and noticed that his eyes were bloodshot and glassy. After reading McSwain his *Miranda* rights, Kicklighter sought McSwain's consent to search the car, which McSwain said belonged to passenger Easter. Kicklighter then ordered the three passengers out of the car, read them their *Miranda* rights, and asked for consent to search the car. According to Kicklighter, all four men consented to the search. A canine unit arrived at the scene, and the dog alerted at several places on the car, including

---

[1] McSwain also was charged with driving under the influence of marijuana and driving with a suspended license.

[2] Lawson also filed a notice of appeal, but has not joined in this appeal.

the trunk. Subsequent searches revealed a small quantity of marijuana in the rear passenger's seat and one and one-half pounds of cocaine in the trunk.

As the evidence at the suppression hearing was undisputed and there was no question as to the credibility of the witnesses, we conduct a de novo review of the trial court's application of the law to the uncontroverted facts. *Hughes v. State*, 269 Ga. 258, 259 (1) (497 SE2d 790) (1998). It is well established that a brief, investigatory stop of a motorist by police

> must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. *Terry v. Ohio*, 392 U. S. 1, 21 (88 SC 1868, 20 LE2d 889) (1968). The issue critical to a determination of the validity of the stop is whether the officer had a particularized and objective basis for suspecting the particular person stopped of criminal activity. Investigative stops of vehicles are . . . invalid if based upon only unparticularized suspicion or hunch. An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal conduct. What is demanded of the police officer, as the agent of the state, is a founded suspicion, some necessary basis from which the court can determine that the detention was not arbitrary or harassing.

(Citations and punctuation omitted.) *Painter v. State*, 227 Ga. App. 875, 877 (490 SE2d 544) (1997). "This demand for specificity in the information upon which police action is predicated is the central teaching of . . . Fourth Amendment jurisprudence." (Punctuation omitted.) *Shapiro v. State*, 233 Ga. App. 620, 621 (2) (504 SE2d 719) (1998). The State bears the burden of presenting evidence that demonstrates a reasonable suspicion of criminal activity. *State v. Holton*, 205 Ga. App. 434, 436 (1) (422 SE2d 295) (1992).

We find that the State failed to meet its burden at the suppression hearing. Kicklighter stopped appellants' vehicle solely because of the lookout he heard over the police radio, not because he observed any traffic violations or criminal activity. According to Kicklighter, the lookout provided a description of the vehicle and occupants and stated that the vehicle was headed toward North or South Carolina and *possibly* contained unspecified "contraband" in the trunk. The only other evidence at the suppression hearing concerning the radio lookout came from McIntosh County Deputy Sheriff Danny Deal, who brought the drug-sniffing dog to the scene. Deal testified that he heard secondhand that the lookout originated from "the [Drug

Enforcement Administration] out of Jacksonville." The State presented no other evidence of the source of the lookout. Likewise, the State presented no evidence of any specific facts on which the lookout might have been based, such as the nature of the suspected criminal activity, the reason for the belief that criminal activity was afoot, or the type of contraband at issue. In the absence of any such information, we have no basis for concluding that the stop was justified by a reasonable suspicion of criminal activity.

Our decision in *Tarwid v. State*, 184 Ga. App. 853 (363 SE2d 63) (1987) controls this case. In *Tarwid*, an officer stopped a vehicle for speeding and requested permission to search the car, but the driver refused. After giving the driver a warning ticket, the officer broadcast a lookout for the car in which he explained, without elaboration, that the occupants "had shown signs of trafficking in drugs." (Punctuation omitted.) Id. at 853 (1). Another officer heard the broadcast, stopped the car again based solely on the broadcast, and discovered drugs inside. At the suppression hearing, the officer who executed the second stop testified as to the broadcast he heard from the first officer, but the first officer did not testify. We held that the second stop was invalid. As the first officer did not search the vehicle, he apparently lacked a legitimate basis for doing so. Thus, in the absence of any evidence establishing the factual basis for the first officer's belief that drug trafficking was taking place, we concluded that the "signs" to which he referred appeared to be "nothing more than 'inarticulate hunches' and thus insufficient to justify a seizure under the Fourth Amendment." Id. at 856. We reasoned that an officer's decision to broadcast a lookout over the police radio does not, by itself, create reasonable suspicion for another officer to stop the vehicle.

The same result applies here. Aside from a vague reference to possible contraband in the trunk, the lookout itself contained no specific, articulable facts suggesting criminal activity on the part of the occupants of the Honda. Although the lookout very well may have been based on particularized facts supporting an inference of criminal conduct, the State failed to present evidence of such a factual basis, as was its burden, and we cannot assume the existence of reasonable suspicion for the stop in the absence of such evidence. *Tarwid*, supra; see also *Painter*, supra at 877-878 (vague, overly general information given by one officer to another that defendant may have been dealing in narcotics did not justify investigatory stop of defendant). To hold otherwise would permit police officers who themselves lack legitimate grounds for a stop to manufacture such grounds simply by broadcasting a lookout for a particular vehicle over the police radio. The State could then avoid suppression of any incriminating evidence merely by failing to disclose the source or

basis of the lookout. We cannot allow the requirements of the Fourth Amendment to be circumvented in this manner.

The State correctly points out that Kicklighter was entitled to rely on information received over the police radio. Because a valid investigatory stop may be based on the collective knowledge of law enforcement, Kicklighter alone was not required to possess all of the information giving rise to a reasonable suspicion of criminal activity before acting upon the lookout. See *Tarwid*, supra at 855. Thus, we do not suggest that Kicklighter himself acted unreasonably in stopping the Honda. However, this does not obviate the State's burden of coming forward with sufficient evidence that the collective knowledge of law enforcement officers gave rise to reasonable suspicion that would justify a *Terry*-stop. Id. at 856; see also *State v. Fowler*, 215 Ga. App. 524, 525 (451 SE2d 124) (1994) ("That which is insufficient in its own right cannot be made sufficient by the fact that it is broadcast over a police network."). The State was required to come forward at the suppression hearing with evidence that some *other* law enforcement officer or officers upon whom Kicklighter might reasonably have relied possessed articulable and specific facts to justify the stop of the Honda. In other words, to survive a Fourth Amendment challenge, the State had to present some evidence of the factual basis for the lookout. As Kicklighter was unable to provide such evidence, it was incumbent upon the State to produce it from some other credible source.

The State asserts that this case is analogous to *State v. Holton*, supra, which involved the sufficiency of an anonymous tip to the police. In *Holton*, the tipster reported that the defendant and his wife would drive to a certain liquor store in a certain car at a certain time and sell marijuana out of their car in the parking lot. Police staked out the liquor store, saw the defendant's car arrive as described, and watched several men approach the car and kneel beside it. Although police could not determine whether illegal activity was taking place, they detained the defendant for questioning and, upon searching the car, discovered marijuana. We concluded that the stop was justified because the anonymous tipster predicted the defendant's future behavior in detail, and the police were able to corroborate every aspect of the tip except the transmission of marijuana. The State contends that here, as in *Holton*, Kicklighter was able to corroborate innocent details of the lookout, including the description and license plate of the vehicle, the race and number of occupants, and the general direction of travel. In light of this "corroboration," the State maintains that the lookout was sufficient to establish reasonable suspicion.

This case differs substantially from *Holton*. Assuming the lookout was based on an anonymous tip — an assumption wholly without

support in the record — the tip contained *no* facts that would create a suspicion of criminal activity. While an anonymous tip may give rise to reasonable suspicion if portions of the tip are sufficiently corroborated,

> [i]n order for the corroboration to be meaningful enough to show reliability, . . . the information corroborated must include a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted. In short, the information corroborated will generally need to be a prediction of future behavior . . . or something similar — that is, inside information not available to the general public.

(Citations and punctuation omitted.) *VonLinsowe v. State*, 213 Ga. App. 619, 621 (1) (445 SE2d 371) (1994). Here, the lookout merely stated that a certain car with a certain number of passengers would be traveling north on I-95 toward one of the Carolina states and that the trunk *possibly* contained unspecified "contraband." This is simply not the kind of predictive "inside information" about alleged criminal activity that can be meaningfully corroborated and that is necessary to support an investigatory stop. See id.; *Moreland v. State*, 204 Ga. App. 218-219 (418 SE2d 788) (1992); *Johnson v. State*, 197 Ga. App. 538, 539-540 (398 SE2d 826) (1990). *Holton* stands for the proposition that when police receive a detailed anonymous tip predicting future criminal activity, they need not corroborate every aspect of the tip before initiating a stop. *Holton* does not hold, however, that an anonymous tip that is bare of any details suggesting criminal behavior may justify a stop.

Because the State failed to present any evidence that the lookout in question was based on specific, articulable facts that gave rise to a reasonable suspicion of criminal activity, we conclude that the investigatory stop of the Honda violated the Fourth Amendment. The subsequent search was therefore tainted, and its results should have been suppressed. See *Tarwid*, supra at 856.

*Judgment reversed. McMurray, P. J., and Andrews, P. J., concur.*

DECIDED SEPTEMBER 15, 1999.

*George A. Waters*, for appellants.

*J. Thomas Durden, Jr., District Attorney, John A. Dow, Assistant District Attorney*, for appellee.