A00A1353. THE STATE v. CUNNINGHAM et al.
(541 SE2d 453)

POPE, Presiding Judge.

Eddie and Tamika Cunningham were charged with trafficking in methamphetamine. They filed a motion to suppress, which the trial court granted, and the State appeals. For the following reasons, we affirm.

Evidence at the suppression hearing showed that on February 25, 1999, Police Officer Kirkpatrick received information from Officer Rodney Clemones, a member of the Rome Drug Task Force, to watch for a specifically described Caprice Classic. Clemones told Kirkpatrick that the car would be coming from the Atlanta area on Highway 411 and was occupied by a white female and possibly a white male. He further advised that the passengers in the vehicle might be carrying methamphetamine. Clemones did not provide any information regarding the source of this information either to Kirkpatrick or at the hearing, nor did he provide any further details regarding the tip.

At 10:45 p.m. Kirkpatrick saw a vehicle which fit the description traveling on the highway. He noticed that the male passenger, later

identified as Eddie Cunningham, was not wearing a seat belt and that the car did not maintain its lane of travel. Kirkpatrick signaled for the vehicle to pull over, and the female driver, later identified as Tamika Cunningham, pulled over. As Kirkpatrick approached the car, he saw the "passenger reaching into the floorboard or the glovebox for something or putting something in there."

Kirkpatrick saw that in addition to Mr. and Ms. Cunningham, there were two children in the car. Upon request Ms. Cunningham was able to produce proof of insurance, but she told Kirkpatrick that she had lost her license. Kirkpatrick ran a license check and discovered that her license was expired. He then gave Ms. Cunningham a verbal warning regarding her failure to maintain a single lane and a courtesy warning on the seat belt violation; he did not issue a citation for her expired license. While Kirkpatrick was giving the warnings, Ms. Cunningham stood at the rear of the car. Kirkpatrick conceded at the suppression hearing that after he had given these warnings, his investigation of the seat belt violation, the lane violation and the status of her driver's license was concluded.

Kirkpatrick then requested Ms. Cunningham's consent to search her vehicle. He asked her two to three times, but Ms. Cunningham did not answer. Kirkpatrick stated that Ms. Cunningham appeared very nervous and would not look at him while he was talking to her. Kirkpatrick admitted that he did not tell Ms. Cunningham that she was free to go at this point because she was still being detained. Kirkpatrick then went and got his drug dog out of the police car. Next, Officer Jacobs arrived on the scene and asked Mr. Cunningham to get out of the car. When he complied, Jacobs did a pat-down of Mr. Cunningham for weapons and found a pipe used to smoke marijuana in his jacket pocket.

Kirkpatrick then walked the dog around the Cunninghams' car, and the dog alerted on all four doors of the vehicle. When Kirkpatrick opened the door to the car, the dog alerted to a yellow plastic container in the passenger side floorboard where Kirkpatrick had earlier observed Mr. Cunningham reaching. Kirkpatrick opened the container and found 42.2 grams of methamphetamine.

Although the State argues that both the initial stop and the subsequent detention were lawful, the Cunninghams did not argue below, nor do they argue here, that the initial stop was invalid. Rather, they contend that the sole issue to be determined is whether Kirkpatrick had the authority to detain and search the vehicle for drugs *after* the traffic stop had been concluded, without consent and without a warrant. We agree with the trial court that he did not.

While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine

whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.

(Citation and punctuation omitted.) *State v. Day*, 237 Ga. App. 771, 772 (1) (516 SE2d 822) (1999).

"Investigative stops of vehicles are analogous to *Terry* stops." *Migliore v. State of Ga.*, 240 Ga. App. 783, 784 (525 SE2d 166) (1999). In *Smith v. State*, 216 Ga. App. 453, 454 (2) (454 SE2d 635) (1995), this court set forth the boundaries of a *Terry* stop:

> While a reasonable investigative stop does not offend against the Fourth Amendment, a *Terry* stop is subject to strict boundaries regarding duration, intent, and scope. Such a stop has been described by this court as a brief stop, limited in time to that minimally necessary to investigate the allegation invoking suspicion, and limited in scope to identification and limited questioning reasonably related to the circumstances that justified the initiation of the momentary stop.

(Citations and punctuation omitted.) Id. "Further, an officer who questions and detains a suspect for other reasons exceeds the scope of permissible investigation unless he has reasonable suspicion of other criminal activity." (Citation and punctuation omitted.) *Migliore*, 240 Ga. App. at 784.

After Kirkpatrick issued the courtesy warnings to Ms. Cunningham, the traffic stop for which she had originally been pulled over had concluded. Kirkpatrick conceded at the suppression hearing that at this point he had concluded his investigation of the possible traffic offenses. Thus, the question becomes whether Kirkpatrick's continued detention of the Cunninghams at this point was based on his reasonable suspicion that they were transporting illegal drugs.

> The appropriate legal standard for determining whether the additional questioning and the walk-around exceeded the scope of permissible investigation, in the absence of consent, is whether the officers had a *reasonable suspicion* that [they were] transporting illegal drugs.

(Citation omitted; emphasis in original.) *Simmons v. State*, 223 Ga. App. 781, 782 (2) (479 SE2d 123) (1996).

"The State bears the burden of presenting evidence that demonstrates a reasonable suspicion of criminal activity." (Citation omit-

ted.) *McSwain v. State*, 240 Ga. App. 60, 61 (522 SE2d 553) (1999). Here, the State argues that Officer Kirkpatrick had a reasonable suspicion that the Cunninghams possessed drugs because: (1) he had a tip from the drug task force which had been corroborated to that point; (2) as the car pulled over, Kirkpatrick noticed Mr. Cunningham bending toward the floor of the car as if concealing something; (3) Ms. Cunningham appeared nervous and would not look at Kirkpatrick when he asked for her consent to search the car; and (4) they had committed three traffic violations.

We disagree. In *McSwain v. State*, officers received a lookout which stated that a certain car with a certain number of passengers would be traveling north on Interstate 95 toward one of the Carolina states and that "the trunk *possibly* contained unspecified 'contraband.'" Id. at 64. This court concluded that the lookout could not support an investigatory stop because it did not contain the kind of "predictive 'inside information' about alleged criminal activity" that could be meaningfully corroborated. Id. In this case, as in *McSwain*, 240 Ga. App. at 62, the lookout which Kirkpatrick received contained no specific, articulable facts suggesting criminal activity on the part of the occupants of the car.

> Although the lookout very well may have been based on particularized facts supporting an inference of criminal conduct, the State failed to present evidence of such a factual basis, as was its burden, and we cannot assume the existence of reasonable suspicion for the stop in the absence of such evidence. . . . To hold otherwise would permit police officers who themselves lack legitimate grounds for a stop to manufacture such grounds simply by broadcasting a lookout for a particular vehicle over the police radio.

Id. at 62.

Similarly, Kirkpatrick's observation that he saw the passenger lean toward the floorboard as if to put something there was not supported by any further evidence. Kirkpatrick did not state that he saw a container on the floor of the car during the stop and did not provide any corroborative details regarding his "hunch" that Mr. Cunningham leaned forward to put something in the glovebox or on the floor.

Finally, without more, the fact that Ms. Cunningham appeared nervous did not establish the reasonable suspicion necessary for the continued detention. See *Simmons v. State*, 223 Ga. App. at 782 (2). Kirkpatrick had completed his investigation for the traffic offenses, and the prolonged detention of the Cunninghams was excessive. See *Smith v. State*, 216 Ga. App. at 454-455 (2); *State v. Kwiatkowski*, 238 Ga. App. 390 (519 SE2d 43) (1999); see generally *Parker v. State*, 233

Ga. App. 616, 617-619 (1) (504 SE2d 774) (1998). Accordingly, the court's grant of the motion to suppress was not clearly erroneous.
*Judgment affirmed. Miller and Mikell, JJ., concur.*

DECIDED NOVEMBER 6, 2000.

*Tambra P. Colston, District Attorney, Leigh E. Patterson, Assistant District Attorney*, for appellant.
*William F. Sparks, Harry M. Moseley, James C. Wyatt*, for appellees.