## A07A0771. BENNETT v. THE STATE.
### (648 SE2d 126)

RUFFIN, Judge.

After denying a motion to suppress, the trial court conducted a bench trial and found James Matthew Bennett guilty of possessing methamphetamine with intent to distribute.[1] On appeal, Bennett contends that the trial court erred in denying his motion to suppress, and he challenges the sufficiency of the evidence. For reasons that follow, we reverse.

In reviewing a trial court's denial of a motion to suppress, we construe the evidence most favorably to uphold the findings and judgment, and we review de novo the trial court's application of the

---

[17] *Summers v. State,* 263 Ga. App. 338, 340 (587 SE2d 768) (2003).

[1] The trial court also found Bennett guilty of possessing methamphetamine, but the trial court merged this count into the charge of possessing methamphetamine with the intent to distribute at sentencing.

law to the undisputed facts.[2] Additionally, we adopt the trial court's findings on disputed facts and credibility unless they are clearly erroneous.[3] So viewed, the record shows that on December 28, 2004, Deputy Scott Boggus of the Dawson County Sheriff's Department was in a marked patrol car in the parking lot of a retail establishment. At approximately midnight, Boggus saw Bennett's vehicle exit the rear area of the building. Although he did not know what Bennett was doing behind the building, he was nevertheless suspicious. Boggus followed Bennett in his vehicle for four or five miles. The officer conceded that although he did not suspect drug activity, he wanted to pull Bennett over and was looking for "[a]ny type of violation of the law." During the last two miles, Boggus observed — measuring Bennett's speed against the patrol car speedometer — that Bennett was driving 60 to 65 miles an hour in a 55 mile per hour zone.

Boggus initiated a traffic stop based upon his suspicion of Bennett and the speed limit violation. At Boggus's request, Bennett exited his vehicle and produced his driver's license and proof of insurance. After confirming the validity of both documents, Boggus noticed that Bennett's license listed an address in another county. Boggus asked whether he still lived at that address, and Bennett replied that he had "moved back in" with his mother in Dawson County. Boggus testified that when he asked Bennett when he had moved, Bennett "could not give [him] a specific time" and failed to reply. As a result, Boggus decided to issue Bennett a courtesy warning "for failure to change address within a 30-day period." Boggus testified that he could have issued a citation or a verbal warning, but because he "prefer[red]" written warnings, he elected to give the citation. However, he did not have any warning forms in his possession.

Boggus arranged for an officer from the traffic enforcement unit to bring him a warning book and, while he was waiting, Boggus asked Bennett "some general questions." Because Bennett "could not make eye contact" with him, Boggus concluded that Bennett was "trying to avoid [him]" and requested consent to search Bennett and his vehicle. Although Bennett did not agree to let Boggus search his vehicle, he consented to a search of his person; Boggus did not find anything in Bennett's pockets. Approximately five minutes after Boggus summoned him, Corporal Chase Johns arrived with a warning book. While Johns wrote out the warning, Boggus retrieved his K-9 dog from his patrol car and walked him to Bennett's vehicle. After the dog alerted on the driver's side of the vehicle, Boggus searched the

---

[2] See *Jackson v. State*, 280 Ga. App. 716 (634 SE2d 846) (2006).
[3] See id. at 716-717.

driver's door of the automobile and found a straw and three small bags containing methamphetamine. After Boggus advised Bennett of his *Miranda* rights, Bennett told the officer that he "delivers the drugs to different people and that he just dropped off a quarter." Bennett was arrested and charged with possessing methamphetamine with intent to distribute and possessing methamphetamine. Boggus never issued Bennett a warning or citation for speeding.

Bennett does not challenge the legality of the initial traffic stop. He argues, rather, that Boggus impermissibly expanded the stop without reasonable suspicion and that his continued detention was illegal.[4] We agree.

The touchstone of the Fourth Amendment, which prohibits unreasonable searches and seizures, is reasonableness.[5] "Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances."[6] To be valid, an investigative stop of a vehicle must be brief and "limited in time to that minimally necessary to investigate the allegation invoking suspicion, and limited in scope to identification and limited questioning reasonably related to the circumstances that justified the initiation of the momentary stop."[7] It is well settled that "if the officer *continues to detain* the subject after the conclusion of the traffic stop and interrogates him or seeks consent to search without reasonable suspicion of criminal activity, the officer has exceeded the scope of a permissible investigation of the initial traffic stop."[8] And the detention cannot be arbitrary or harassing.[9]

Here, the officer was not certain whether he even questioned Bennett about speeding, which was his initial justification for the traffic stop. Moreover, the officer never issued a speeding citation to Bennett. Boggus testified that his concern throughout the stop was whether Bennett had failed to update his driver's license within 30 days of moving. OCGA § 40-5-33 requires that a person shall *apply* to the Department of Motor Vehicle Safety for a driver's license showing a new address within *60* days of moving from the address listed on the license; but failure to do so "shall not deem the license invalid."

---

[4] The State does not dispute that Bennett was detained from the time of the initial traffic stop until his subsequent arrest.

[5] See *Ohio v. Robinette*, 519 U. S. 33, 39 (117 SC 417, 136 LE2d 347) (1996).

[6] (Punctuation omitted.) *State v. Jourdan*, 264 Ga. App. 118, 122 (2) (589 SE2d 682) (2003).

[7] (Punctuation omitted.) *State v. Cunningham*, 246 Ga. App. 663, 665 (541 SE2d 453) (2000).

[8] (Punctuation omitted; emphasis in original.) *Padron v. State*, 254 Ga. App. 265, 268 (1) (562 SE2d 244) (2002).

[9] See *Garmon v. State*, 271 Ga. 673, 677 (2) (524 SE2d 211) (1999).

Accordingly, it is dubious whether a violation of this statute constitutes a crime. Even if it does, however, the evidence that Bennett had in fact failed to apply for a driver's license with the new address within 60 days of moving was limited at best.

More importantly, Bennett's purported violation of the statute did not justify his detention by the police. Boggus concedes that he could have given Bennett either a verbal or a written warning. Under these circumstances, Boggus's decision to detain Bennett while he waited for another officer to bring a written warning book was unreasonable. While they waited, Boggus sought permission to search Bennett and his vehicle based solely on his perception that Bennett was avoiding him because he failed to make eye contact with the officer. Given the totality of the circumstances of this case, we cannot agree with the trial court that Boggus "had specific, articulable facts that could constitute a particularized and objective basis for suspecting that [Bennett] was involved in any criminal activity."[10] Since the methamphetamine was discovered during Boggus's continued illegal detention of Bennett, the trial court erred in not granting the motion to suppress.[11]

Based upon this holding, we need not address Bennett's challenge to the sufficiency of the evidence.

*Judgment reversed. Blackburn, P. J., and Bernes, J., concur.*

DECIDED JUNE 12, 2007.

*Nathanael A. Horsley*, for appellant.
*Lee Darragh, District Attorney, Lindsay H. Burton, Assistant District Attorney*, for appellee.

---

[10] *Padron*, supra at 268-269; see *Cunningham*, supra at 665-666; *State v. Kwiatkowski*, 238 Ga. App. 390, 392 (519 SE2d 43) (1999); *Smith v. State*, 216 Ga. App. 453, 454 (2) (454 SE2d 635) (1995); compare *Byers v. State*, 272 Ga. App. 664, 666 (613 SE2d 193) (2005) (no illegal detention where drug dog search conducted while police are in the process of writing a citation for traffic violation that prompted the traffic stop).

[11] See *Padron*, supra at 269; *Smith*, supra.