## A08A1079. KING v. THE STATE.
(671 SE2d 198)

BARNES, Chief Judge.

Following a bench trial, Innocent S. King was convicted of possession of marijuana, and possession of marijuana with the intent to distribute. On appeal he contends the trial court erred in denying his motion to suppress because the initial stop of his vehicle was impermissibly expanded, and there was no reasonable articulable suspicion to detain him beyond the scope of the original stop. Finding no reversible error, we affirm King's convictions.

Where the evidence at a hearing on a motion to suppress is uncontroverted and no question of credibility is presented, we review the trial court's application of the law to these undisputed facts de novo. *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). As to questions of fact and credibility, however, we construe the evidence most favorably to the upholding of the trial court's findings and judgment, which must be accepted unless clearly erroneous. *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

So viewed, the evidence shows that a deputy with the Douglas County Sheriff's Department was monitoring traffic when he noticed a gold Chevrolet Impala with dark tinted windows traveling at a slower than posted speed. Based on his past experience, the deputy suspected that the vehicle's windows were illegally tinted to allow less than 32 percent of light transmission.[1] The deputy pulled the car

---

[1] Except as provided in this Code section, it shall be unlawful for any person to operate a motor vehicle in this state: (1) Which has material and glazing applied or

over to test the window tint with his tint meter and noticed "a lot of movement on [the driver's] part just inside the cab of the car." As he approached the passenger window to conduct the test, he noticed "a very strong odor of an air freshener" that appeared to have been freshly sprayed. The deputy tested the window tint, which allowed only 16 percent light transmission in violation of Georgia law.

The deputy requested King's driver's license and proof of insurance and observed that King was "shaking more than normal." The deputy acknowledged that people are customarily nervous when they are stopped, but that "in some cases people are more nervous than others," and that he had specifically noted King's nervousness. As the deputy checked King's tag and conducted a Georgia Crime Information Center (GCIC) check, a K-9 officer with the City of Douglasville Police Department arrived. During this time, King got out of his car and retrieved a school book from his trunk. After the GCIC check was completed, the deputy told King that he was only going to issue a written warning for the window tint violation. He testified that his police department mandated that all warnings be written. The deputy then asked King a series of questions including whether there were weapons, narcotics, marijuana, cocaine, or Ecstasy in his vehicle. King responded no, and the deputy testified that based on King's slower than normal driving, the movement in the car before it stopped, the strong air freshener odor, and King's excessive nervousness, he then asked King for permission to search the car. King denied the request, and told the deputy that he needed to leave because he was late for class.

The deputy asked the K-9 officer, who had arrived shortly after the stop, to deploy his canine for an open air search around King's car. The written warning had not been given to King before the open air search. The dog alerted and the officer informed King that they were going to search his vehicle, and asked if there were any drugs inside the car. King admitted, and the officers confirmed, that there was marijuana in the rear seat.

The trial court held that, although the deputy could have expanded the scope of the original stop because he had a particular, articulable suspicion that King was transporting drugs, in this case, the deputy did not expand the stop. "[T]he undisputed evidence is

---

affixed to the front windshield, which material and glazing when so applied or affixed reduce light transmission through the windshield; or (2) Which has material and glazing applied or affixed to the rear windshield or the side or door windows, which material and glazing when so applied or affixed reduce light transmission through the windshield or window to less than 32 percent, plus or minus 3 percent, or increase light reflectance to more than 20 percent.
OCGA § 40-8-73.1 (b).

that [the deputy] had not completed the written warning at the time he asked for consent to search and that the open air search was conducted prior to the written warning being completed."

King contends that the trial court erred in denying his motion to suppress because the deputy exceeded the scope of the original purpose of the stop by questioning him and having an open air search performed after King had been verbally informed that he was receiving a warning. King claims that the deputy expanded the permissible scope of the initial stop because the original purpose of the stop was achieved once the deputy informed King that he was not going to be cited for the window tint violation, and thus the "issuance of a written warning to [King] furthered no legitimate lawful purpose." We do not agree.

> [An] officer's purpose in an ordinary traffic stop is to enforce the laws of the roadway, and ordinarily to investigate the manner of driving with the intent to issue a citation or warning. Once the purpose of that stop has been fulfilled, the continued detention of the car and the occupants amounts to a second detention.

(Citations omitted.) *Daniel v. State*, 277 Ga. 840, 841 (1) (597 SE2d 116) (2004).

> To be valid, an investigative stop of a vehicle must be brief and limited in time to that minimally necessary to investigate the allegation invoking suspicion, and limited in scope to identification and limited questioning reasonably related to the circumstances that justified the initiation of the momentary stop. It is well settled that if the officer *continues to detain* the subject after the conclusion of the traffic stop and interrogates him or seeks consent to search without reasonable suspicion of criminal activity, the officer has exceeded the scope of a permissible investigation of the initial traffic stop.

(Punctuation and footnotes omitted.) *Bennett v. State*, 285 Ga. App. 796, 798 (648 SE2d 126) (2007). It is the "unsupported additional detention, not police questioning, [which] constitutes the Fourth Amendment violation, because, of course, mere police questioning does not constitute a seizure." (Punctuation and footnote omitted.) *Evans v. State*, 262 Ga. App. 712, 715 (1) (a) (586 SE2d 400) (2003).

Here, the trial court did not err in finding that the stop, which took less than ten minutes, was not expanded, as the undisputed evidence was that the deputy had not completed his written warning when he asked King for consent to search and the open-air search was conducted. While King would have us hold that a written

*warning per se expands a detention, we can find no basis in Terry v. Ohio,* 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968), or its progeny for such a conclusion. Compare *Bennett v. State,* supra, 285 Ga. App. at 797-798 (officer admitted he could have given defendant either verbal or written warning; thus, decision to detain defendant while he waited for another officer to bring written warning book was unreasonable). Accordingly, the trial court's order denying King's motion to suppress is affirmed.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED NOVEMBER 14, 2008 —
RECONSIDERATION DENIED DECEMBER 11, 2008.

*McIlhinney & Sessions, Daniel B. Sessions,* for appellant.
*David McDade, District Attorney, Jeffrey L. Ballew, James A. Dooley, Assistant District Attorneys,* for appellee.