### A02A0339. THE STATE v. THOMPSON.
(569 SE2d 254)

POPE, Presiding Judge.

The state appeals the trial court's order granting a motion to suppress filed by Lawrence Edward Thompson. We affirm.

In reviewing the grant or denial of a motion to suppress, we construe the evidence most favorably to uphold the findings and judgment of the trial court. *Pilkenton v. State,* 254 Ga. App. 127 (561 SE2d 462) (2002). "[T]he factual findings of the trial court will not be disturbed unless they are clearly erroneous. However, the application of the law to the facts is subject to de novo review." (Footnotes omitted.) *Smith v. State,* 245 Ga. App. 613, 615 (538 SE2d 517) (2000). Here, the facts are undisputed, and our review is de novo.

On November 2, 2000, two officers with the Douglasville Police Department observed a blue car traveling in the center lane of Interstate 20 swerve over into the right lane, causing another vehicle to move over. As the officers began to follow the car, they observed the car cross over into the right lane and then back over to the left approximately three to four times. The officers then initiated a traffic stop and identified Thompson as the driver of the car.

One of the officers requested Thompson's license and insurance information, and as the officer took the information he observed that Thompson's hands were trembling. The officer also noticed a "real strong" odor of either detergent or air freshener when he spoke with Thompson through the car window, but he observed no detergents or similar items in the car. The officer further observed that when Thompson responded to questions, he would not maintain eye contact and his voice was broken, almost quivering. When the officer asked Thompson why he was so nervous, he replied that police made him nervous. After Thompson was issued a warning citation for the traffic violation, the officer returned his license and insurance information.

Afterward the officer continued talking to Thompson and specifically asked whether he was transporting any narcotics, stolen guns or property, or other items. When the officer questioned him about marijuana in particular, he observed that Thompson's demeanor changed and he became more defensive. The officer then asked for consent to search the car, but Thompson declined to give it. This exchange lasted approximately three to four minutes.

At the hearing on the motion to suppress, the officer stated that 95 percent of the people stopped by police do not shake like Thompson did that day. The officer testified that the failure to make eye contact and the quivering voice gave him the impression that Thompson was worried and nervous about something other than the traffic stop. He also said that in his experience as a narcotics investigator he had seen people on numerous occasions use air fresheners, detergent, or dryer sheets to mask the smell of marijuana.

Based upon these factors, the officer called in a drug dog to do an open air sniff around the car. The drug dog arrived approximately 20 minutes later. When the dog alerted, the officers searched the car and discovered a package under the backseat. The package was wrapped in Saran wrap, dryer sheets, and liquid detergent. The package smelled strongly of detergent. Inside the package, the officers discovered 4.9 ounces of marijuana.

In ruling upon Thompson's motion to suppress, the trial court found, and we agree, that the initial stop in this case was valid. The court also ruled that the facts of this case did not provide a basis for the officer's further questioning and the subsequent search. The trial court stated that it was "not prepared [to hold] that merely because an officer sniffs something during the [course] of a traffic stop he is authorized to initiate further detention in order to bring a drug dog to the scene."

After an initial traffic stop is complete, an officer is required to have a reasonable suspicion of criminal conduct before proceeding with an additional investigation:

> An officer must have reasonable suspicion of criminal conduct before conducting additional questioning and searching a vehicle once a normal traffic stop has ended and the officer has told the motorists they are free to go. To meet the reasonable suspicion standard, an officer's investigation during a traffic stop must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. Although this suspicion need not meet the standard of probable cause, it must be more than mere caprice or a hunch or an inclination.

(Citation omitted.) *Berry v. State*, 248 Ga. App. 874, 881-882 (4) (547 SE2d 664) (2001).

To determine whether a reasonable articulable suspicion exists, courts must look to the totality of the circumstances. "Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *State v. Ledford*, 247 Ga. App. 412, 415 (1) (b) (543

SE2d 107) (2000). Among the circumstances for the court to analyze are "objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers." (Punctuation omitted.) *State v. Causey*, 246 Ga. App. 829, 832 (1) (b) (540 SE2d 696) (2000), quoting *United States v. Cortez*, 449 U. S. 411, 417-418 (101 SC 690, 66 LE2d 621) (1981).

Here, the officer observed that Thompson was extraordinarily nervous and that his behavior became defensive when marijuana was mentioned. "But nervousness alone is not sufficient to establish reasonable suspicion to detain and investigate for illicit drug activity." (Footnote omitted.) *Gonzales v. State*, 255 Ga. App. 149, 150 (564 SE2d 552) (2002). The only other factor noted by the officer was a strong smell of laundry detergent or dryer sheets. Although laundry detergent and dryer sheets can be used to mask the odor of an illegal substance, they are themselves legal substances that can be used for a legal purpose and thus do not justify the officer's further detention of Thompson under the facts of this case. Cf. *Bius v. State*, 254 Ga. App. 634 (563 SE2d 527) (2002); *Berry v. State*, 248 Ga. App. at 880 (3) (cases holding that although a drive-out tag can be evidence of criminal activity, such as a stolen car or a violation of the registration laws, the presence of a drive-out tag alone is not sufficient to authorize a traffic stop); *L. B. B., III v. State of Ga.*, 129 Ga. App. 163 (198 SE2d 895) (1973) ("A cigarette paper is legal and gives no cause to arrest and search.").[1]

Accordingly, we cannot say that the trial court erred in granting Thompson's motion to suppress.

*Judgment affirmed. Ruffin and Barnes, JJ., concur.*

DECIDED JUNE 27, 2002.

*David McDade, District Attorney, Pamela D. Brophy, Assistant District Attorney*, for appellant.

*Dan N. Winn*, for appellee.

---

[1] But see *Commonwealth v. Rogers*, 741 A2d 813, 817 (Pa. Super. Ct. 1999) (nervousness, incomplete and admittedly fictitious paperwork for vehicle, along with open boxes of laundry detergent and fabric softener sufficient to justify further investigation); *United States v. Pollington*, 98 F3d 341 (8th Cir. 1996) (odor of laundry detergent, fact that officer did not believe defendants' story about borrowing a motor home to take a trip across several states, and nervousness sufficient to support detention).