A02A2334. JONES v. THE STATE.
(578 SE2d 562)

SMITH, Chief Judge.

Hameed Adil Jones was convicted on charges of cocaine possession and improper lane change. On appeal, he argues that the trial court erred in denying his motion to suppress. Because the trial court was authorized to conclude that Jones was not illegally detained during his traffic stop, and also because the investigating officer had rea-

sonable, articulable reasons for suspecting criminal activity when he briefly detained Jones, we affirm.

On appeal from a denial of a motion to suppress, we construe the evidence in favor of the trial court's ruling, and the trial court's application of law to undisputed facts is subject to de novo review. *Jones v. State*, 253 Ga. App. 870 (560 SE2d 749) (2002). And "[w]here there is evidence to support the decision of a trial judge on motion to suppress evidence, that decision will not be disturbed on appeal." (Citation, punctuation and emphasis omitted.) *In the Interest of J. L. G.*, 209 Ga. App. 565, 566 (434 SE2d 126) (1993). Viewed in this light, the undisputed evidence presented at the hearing on Jones's motion shows that Officer Russell Rogers stopped the vehicle driven by Jones after observing it twice cross the yellow line to the left and then veer to the right, over the white fog line. Rogers activated his blue lights, and before Jones came to a complete stop Rogers observed Jones reach over the passenger's seat with his right hand. According to Rogers, Jones placed his "right hand up under the passenger seat and proceeded as if he were stuffing something up under the seat." Rogers stated that Jones appeared to be "forcibly pushing" his arm under the front passenger seat. He thought Jones might be hiding something.

After the vehicle stopped, Rogers approached Jones and explained the reasons he had made the traffic stop. He also asked "Jones why he placed his hand up under the seat" and requested permission to search the vehicle. Jones, who was acting nervous and "sweating profusely," denied that he had reached under the seat and refused permission to search. Rogers returned to his patrol car and called for the local canine unit while he was checking Jones's license.

Canine handler Terry Harget arrived between one and three minutes after this call was made. He approached Jones's vehicle, explained the procedure he would use in allowing his dog to perform an open air search, and then walked the dog around the car. Jones remained inside the car and was instructed several times to keep his hands on the steering wheel for the officers' safety. But Jones "continued to pull his hands off the steering wheel trying to reach under the front passenger seat." The dog alerted on the passenger side door approximately 30 seconds after the open air search began. Jones was removed from the car, and a search revealed a small black cap under the passenger seat containing 32 individually packaged plastic bags of suspected crack cocaine. Rogers also found $1,014 on Jones's person. Rogers testified that no more than five minutes elapsed from the time he made the call for Harget to bring the canine unit until the time the search was completed. Jones was arrested, and while being transported to jail he told Rogers "that there's too many jobs in

Atlanta for him to be doing this type of thing. When he got out he needed to get a real job."

Jones filed a motion to suppress the cocaine on the ground that he was illegally arrested. The trial court denied the motion, concluding that the detention of Jones was not prolonged and, alternatively, that Rogers had reasonable suspicion to believe that Jones was involved in criminal activity. Based on the evidence presented during the suppression hearing, the court found Jones guilty of the crimes charged against him. On appeal, Jones challenges the denial of his motion to suppress. He argues that the traffic stop ended after he was pulled over and that Rogers had no reasonable suspicion justifying further investigation of a drug offense. He contends that Rogers effected a "wrap-around arrest," in that Rogers "attempted to extend the illegal original traffic stop by several lawful minutes, allowing the K-9 officer time to arrive during the period of the allegedly lawful detention and attempting to cloak the resulting illegal search in legitimacy."

We first note that, contrary to Jones's argument, the traffic stop itself was not illegal. Rogers observed Jones's vehicle veering over the middle yellow line as well as the white fog line. A reasonable officer would have stopped the vehicle under these facts. See generally *Rogers v. State*, 253 Ga. App. 863, 864 (1) (560 SE2d 742) (2002). Evidence was presented showing that the reason for Jones's brief detention was not simply the suspicion of illegal activity but instead was for the legitimate purpose of performing a driver's license check. Id. As discussed above, Rogers called the canine unit while he was running a license check, and that unit arrived less than three minutes later. Some evidence therefore supports the trial court's conclusions that "the traffic stop had been neither abandoned nor concluded at the time of the walk-around" and that "there was no prolonged detention beyond the traffic stop." Because Jones was validly detained for only a brief period of time, Rogers "was free to have the handler walk the dog around the car, as use of a trained drug detection dog, in a location where he is entitled to be, to sniff the exterior of a container, is not an unreasonable search." (Citations, punctuation and footnote omitted.) Id. Once the dog alerted on the outside of the car, the officers had probable cause to believe that contraband would be found inside and were authorized to conduct a search. Id.

In addition, the court correctly concluded that "Rogers had reasonable suspicion to believe that [Jones] was involved in criminal activity" and that his continued detention was therefore authorized. "To justify additional questioning of a driver and the search of a vehicle following a routine traffic stop, an officer must have reasonable suspicion of criminal conduct. . . . While this suspicion need not meet the standard of probable cause, it must be more than mere

caprice or a hunch or an inclination." (Citations and footnote omitted.) *Gary v. State of Ga.*, 249 Ga. App. 879, 880 (1) (549 SE2d 826) (2001).

While Rogers was pulling Jones over, he clearly observed Jones "making furtive movements and reaching under the seat on the passenger side of the vehicle." When questioned by Rogers, Jones appeared to be nervous and was "sweating profusely," and he denied making these movements. This evidence supports the trial court's conclusion that this "denial of actions clearly seen by Officer Rogers led him to suspect [Jones] of concealing something under the seat." It is indeed well established that extreme nervousness alone does not constitute a valid reason for detention based on suspicion of criminal activity. See, e.g., *State v. Thompson*, 256 Ga. App. 188, 190 (569 SE2d 254) (2002); *Montero v. State*, 245 Ga. App. 181, 184 (537 SE2d 429) (2000); *Migliore v. State of Ga.*, 240 Ga. App. 783, 786 (525 SE2d 166) (1999); *Simmons v. State*, 223 Ga. App. 781, 782 (2) (479 SE2d 123) (1996). But Jones's nervous behavior, in *addition* to Rogers's clear observation that Jones appeared to be hiding something and Jones's denial of this behavior, constituted evidence on which the trial court could conclude that under the totality of the circumstances, Rogers had a reasonable, articulable suspicion of criminal activity justifying a brief detention. See generally *Quinn v. State*, 268 Ga. 70 (485 SE2d 483) (1997) (while approaching suspects, deputy noticed one placing something under seat of car). "The period of detention while waiting for the drug dog was minimal," *Gary*, supra at 880-881 (1), and the trial court was authorized to deny Jones's motion to suppress.

*Judgment affirmed. Eldridge and Ellington, JJ., concur.*

DECIDED FEBRUARY 25, 2003.

*Timothy T. Herring*, for appellant.
*Robert E. Keller, District Attorney, Chad M. Doleac, Assistant District Attorney*, for appellee.