A05A0516. BYERS v. THE STATE.
(613 SE2d 193)

ANDREWS, Presiding Judge.

In a stipulated bench trial, Phillip Adolph Byers was found guilty of possession of marijuana with intent to distribute.[1] Byers appeals, claiming the trial court erred in denying his motion to suppress the drugs discovered in his car during a traffic stop. Because we find no error in the trial court's ruling, we affirm.

When reviewing a trial court's ruling on a motion to suppress, we construe the evidence most favorably toward upholding the trial court's findings and judgment and we accept that court's findings on

---

[1] Byers stipulated to venue in Douglas County and to a crime lab report that the marijuana confiscated weighed three pounds.

issues of disputed fact and credibility unless those findings are clearly erroneous. *Ledford v. State*, 220 Ga. App. 272, 273 (469 SE2d 401) (1996).

Here, the transcript from the suppression hearing shows that Investigator Mitchell testified that he was on his way to work in an undercover vehicle, when he noticed the driver ahead of him weaving in and out of traffic. Mitchell noted that the driver, later identified as Byers, was going noticeably faster than the rest of the cars and he had to exceed the speed limit to keep him in sight.

Mitchell called for assistance and Sergeant North, who was on patrol in a marked unit with his drug dog, responded. After North also saw Byers change lanes improperly, he turned on his lights and pulled Byers over to the shoulder.

After asking Byers for his license and insurance, North asked him to step back to the rear of the car. North asked Byers about weapons and Byers denied having any. When North asked if he could do a pat-down, Byers told him that he did have a knife. North then asked if there were any weapons or contraband in the car. North stated that Byers seemed very nervous and shaky, and that his voice was "broken-up." North noticed a complete change in Byers's temperament and demeanor when he asked Byers about having any drugs.

At that point, North asked Mitchell to write the citation while he did a walk-around with the drug dog.[2] As Mitchell was writing out the traffic ticket, North walked his dog around the perimeter of Byers's car. During the walk-around, which North testified lasted 30 to 45 seconds, the drug dog alerted. North asked Byers if there was anything he wanted to tell him, and Byers said there were six pounds of marijuana in the car. Byers was then arrested, and the marijuana found inside his car was confiscated.

Byers contends that the search of his vehicle was unlawful because it was done without his consent, without a search warrant, and without any articulable suspicion. Although conceding the legality of the initial traffic stop, Byers challenges the subsequent detention and search, which he claims went beyond the scope of the initial stop. He points out that a display of nervousness, without more, is insufficient to authorize a search of a vehicle. See *Montero v. State*, 245 Ga. App. 181, 184 (537 SE2d 429) (2000).

Under the Fourth Amendment's proscription against unreasonable seizures, an officer must have reasonable suspicion of criminal

---

[2] Calling for a drug dog to do a walk-around of the car is not a search within the meaning of the Fourth Amendment. See, e.g., *Kates v. State*, 271 Ga. App. 326, 327-328 (1) (609 SE2d 710) (2005).

conduct before conducting additional questioning and searching a vehicle once a normal traffic stop has ended and the officer has told motorists they are free to go. *Evans v. State*, 262 Ga. App. 712, 715 (1) (586 SE2d 400) (2003). Here, the evidence shows that while one officer was in the process of writing the citation, the other officer was doing a walk-around of the car with the drug dog. Mitchell testified that from the time that Byers was pulled over until he began to write Byers the citation, only two or three minutes had elapsed. At the time the drug dog alerted on Byers's car, the traffic stop was still in progress. While Byers was being briefly and validly detained, North was free to walk his trained drug detection dog around the car. See *Jones v. State*, 259 Ga. App. 849, 851 (578 SE2d 562) (2003).

Unlike *Simmons v. State*, 223 Ga. App. 781 (479 SE2d 123) (1996), upon which Byers relies, the drug dog search was not conducted after the citation was issued and the traffic stop completed. Also compare *Padron v. State*, 254 Ga. App. 265, 268-269 (1) (562 SE2d 244) (2002). The undisputed evidence is that the drug dog walk-around and alert occurred before Officer Mitchell finished writing out the traffic citation. Therefore, Byers's detention was not prolonged for any length of time beyond the initial stop.

*Smith v. State*, 216 Ga. App. 453 (454 SE2d 635) (1995), also cited by Byers, is not on point. In *Smith*, unlike here, the driver was illegally detained pending the arrival of a K-9 unit based upon "the officer's hunch that Smith's truck contained narcotics." Id. at 455. This Court held that Smith's motion to suppress should have been granted because "the marijuana was discovered during the continued illegal detention of Smith." Id. Here, there was no illegal detention. Nor was this a situation where police lacked reasonable, articulable suspicion to stop a defendant's vehicle in the first place. See *Berry v. State*, 248 Ga. App. 874, 882 (547 SE2d 664) (2001); see also *State v. Burns*, 238 Ga. App. 683, 686 (520 SE2d 39) (1999).

Byers also argues that North's questioning before he brought out the drug dog and before the traffic citation was issued, exceeded the scope of the traffic stop. "[A] police officer, having effected a valid stop of a vehicle, does not violate a driver's Fourth Amendment rights merely by inquiring about his possession of weapons or drugs or requesting his consent to search his vehicle for those weapons or drugs." *State v. Mauerberger*, 270 Ga. App. 794, 795 (608 SE2d 234) (2004). "[I]t is not the nature of the question that offends the Fourth Amendment, it is whether in asking the questions the officer impermissibly *detains* the individual beyond that necessary to investigate the traffic violation precipitating the stop." (Citations and punctuation omitted; emphasis in original.) Id.

Here, the officer's question as to whether he had weapons or contraband in the car did not unreasonably detain Byers beyond the

time necessary to investigate the violation and write up the citation. As previously stated, it was only a matter of minutes between the stop and the time the officer began writing the citation.

Finally, as to Byers's incriminating remarks about the marijuana after the drug dog alerted, the officers had probable cause to search his car before they questioned him. "Once the dog alerted on the outside of the car, the officers had probable cause to believe that contraband would be found inside and were authorized to conduct a search." (Citation omitted.) *Jones*, supra, 259 Ga. App. at 851.

Therefore, because the initial stop was justified and because Byers was not detained any longer than necessary to effectuate the purpose of the stop, the trial court did not err in denying Byers's motion to suppress the marijuana found in his car. *Jones*, supra, 259 Ga. App. at 852.

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED APRIL 6, 2005.

*Mary Erickson*, for appellant.
*David McDade, District Attorney, Paul J. Miovas, Jr., Assistant District Attorney*, for appellee.