## A08A1453. POLLACK v. THE STATE.
(670 SE2d 165)

RUFFIN, Presiding Judge.

Following a bench trial, Kevin Leroy Pollack was found guilty of trafficking in cocaine, trafficking in marijuana, and following too closely. He appeals the denial of his motion to suppress. For reasons that follow, we affirm.

In reviewing a trial court's ruling on a motion to suppress, we accept the trial court's findings of fact and determinations of witness credibility unless they are clearly erroneous, and we construe the evidence in favor of the trial court's ruling and affirm if there is any evidence to support the ruling.[1] So viewed, the evidence shows that on July 17, 2006, Trooper Kevin Turner of the Georgia State Patrol was contacted by Trooper Dallas VanScoten, who asked him to go to Cobb County to assist him with a traffic stop of a convicted felon who was reportedly in possession of several firearms. Trooper Turner was told to be on the lookout for a 2005 Chrysler 300, with a specific license plate number, and advised that the vehicle would be going to a gym near Barrett Parkway. Trooper VanScoten drove his patrol car to Trooper Turner's location near the Interstate 75 exit ramp at Barrett Parkway, where both officers observed Pollack's vehicle.

The troopers followed Pollack's vehicle as he turned off of the highway exit ramp. Turner testified that Pollack was following another vehicle at the "unsafe distance" of six feet while traveling approximately 30 miles per hour. According to Turner, he also observed that Pollack's windows were darkly tinted. Pollack turned into the parking lot of a gym, and Turner activated his blue lights and followed him into the parking lot.

After Pollack exited his vehicle, Trooper Turner approached him and introduced himself. Pollack immediately "apologized [to Turner], stating he was sorry." Turner told Pollack that he stopped him for the window tint and for following another vehicle too closely. Trooper Turner testified that as he approached to examine the window tint, Pollack "voluntarily offered [him] the keys to the car."

After Trooper VanScoten arrived, Turner asked Pollack if he could open the automobile door to check the window tint, and Pollack agreed and handed Turner the keys to the vehicle. When

---

[1] See *Macias v. State*, 292 Ga. App. 225 (664 SE2d 265) (2008).

Turner opened the driver's door of Pollack's vehicle, he "was overwhelmed by a strong odor of raw marijuana."[2] Turner asked VanScoten "to confirm [Turner's] suspicions," and VanScoten indicated that he also smelled marijuana. When the officers questioned him about the odor, Pollack advised that he did not do drugs because he was on parole.[3] The troopers asked him for permission to search his car, but Pollack refused, and the officers summoned a K-9 unit to the scene.

The K-9 unit arrived approximately 43 minutes after the traffic stop, and the dog began a free-air sniff of the closed vehicle. The dog alerted on the passenger's side door and, after going into the vehicle, made another positive alert on the dash. The troopers searched the vehicle and found an envelope containing $5,000 in the glove compartment. The police also searched the trunk, where they found a plastic box containing a zipped nylon bag. Inside the bag, they found four sealed plastic bags of marijuana. Trooper Turner also used a tint meter to test the tint on the vehicle's windows, and it showed that the tint was 32 percent, which is within the legal limit.[4]

The police arrested Pollack at the scene. He moved to suppress the evidence, and the trial court denied the motion following an evidentiary hearing. After a subsequent stipulated bench trial, Pollack was convicted of trafficking in marijuana, trafficking in cocaine, and following too closely.[5]

1. Pollack contends that the trial court should have granted the motion to suppress the evidence because the police lacked sufficient legal basis to effectuate the traffic stop and because the stop was pretextual. To initiate a traffic stop, a police officer must have a reasonable articulable suspicion of criminal activity.[6] "A suppression motion arguing that a traffic stop was pretextual necessarily fails where an officer observes the motorist committing even a minor traffic violation."[7]

---

[2] Trooper Turner testified that he had been trained to detect the smell of both raw – or unburned – marijuana and burned marijuana, and had made "numerous" arrests involving raw marijuana.

[3] Pollack could not recall whether, as a condition of his release on parole, he had signed a waiver of his Fourth Amendment rights to search and seizure. Although the police confirmed that Pollack was in fact on parole, the record is silent regarding any Fourth Amendment waiver.

[4] See OCGA § 40-8-73.1 (b) (2) (it is unlawful to operate a motor vehicle which has material and glazing affixed to the rear windshield or side or door windows which reduces light transmission to less than thirty-two percent, plus or minus three percent).

[5] Pollack stipulated that the police found approximately 21.5 grams of cocaine, with a purity of over 80 percent, and approximately 14 pounds of marijuana in the trunk of Pollack's vehicle.

[6] See *Stearnes v. State*, 261 Ga. App. 522, 524 (2) (583 SE2d 195) (2003).

[7] Id.

Here, Trooper Turner testified that he observed Pollack following within six feet of the vehicle while traveling approximately 30 miles per hour, which he believed to be an unsafe distance.[8] He also observed that Pollack's windows appeared to be illegally tinted. The trial court found that "Turner's observation of [Pollack's] perceived traffic violations were enough to justify the stop." We are required to defer to the trial court's determination on the credibility of witnesses.[9] Since there was evidence to support the trial court's conclusion regarding the basis for the traffic stop, Pollack's challenge to the stop affords him no relief.[10] And the fact that the field test ultimately showed that Pollack's window tint was within legal limits does not render the stop improper.[11]

2. Pollack also argues that Trooper Turner did not have a sufficient legal basis to open the door and enter his vehicle. The window tinting statute does not apply to vehicles that had the windows tinted before factory delivery.[12] In his brief, Pollack contends that he told Trooper Turner — before he opened the vehicle — that he purchased the car from the dealership with the windows already tinted. However, although there is some conflict in the record regarding when Pollack purchased the vehicle, there is no evidence that Pollack stated that he purchased the vehicle from a dealership.[13] Thus, the dealership exception set forth in OCGA § 40-8-73.1 (c) (6) (D) is inapplicable.

More importantly, however, the trial court found that Pollack voluntarily gave his keys to the police and agreed that the officer could open the door to check the window tint. Thus, Pollack's consent invalidates his argument that the officer did not have a valid legal basis for opening the door to his car.[14]

---

[8] OCGA § 40-6-49 (a) provides that "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway."

[9] See *Bailey v. State*, 283 Ga. App. 365, 367 (1) (641 SE2d 548) (2007).

[10] See *Ciak v. State*, 278 Ga. 27, 30 (3) (597 SE2d 392) (2004) (officer's belief that the windows on motorist's vehicle were tinted too darkly justified traffic stop); *Bailey*, supra; *Perry v. State*, 274 Ga. App. 551, 553 (618 SE2d 172) (2005) (affirming denial of motion to suppress where officer stopped the defendant for following another car too closely); *Wright v. State*, 272 Ga. App. 423, 427 (2) (612 SE2d 576) (2005) (" '[I]f the arresting officer witnessed the driver breaking even a relatively minor traffic law, a motion to suppress under the Fourth Amendment arguing that the stop was pretextual must fail.' ").

[11] See *Ciak*, supra.

[12] See OCGA § 40-8-73.1 (c) (6) (D).

[13] At the suppression hearing, Trooper Turner testified that Pollack told him that he purchased the vehicle two days before the stop. The recording of the traffic stop shows that Pollack stated that he purchased the vehicle two years before the stop.

[14] See *Butler v. State*, 272 Ga. App. 557, 559 (612 SE2d 865) (2005) (valid voluntary consent to a search eliminates the need for probable cause); *McDaniel v. State*, 227 Ga. App. 364, 366 (2) (489 SE2d 112) (1997).

3. Pollack further asserts that his detention was unwarranted.

An officer must have reasonable suspicion of criminal conduct before conducting additional questioning and searching a vehicle once a normal traffic stop has ended and the officer has told the motorists they are free to go. To meet the reasonable suspicion standard, an officer's investigation during a traffic stop must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. Although this suspicion need not meet the standard of probable cause, it must be more than mere caprice or a hunch or an inclination.[15]

(a) Here, Trooper Turner testified that after he stopped Pollack for a traffic violation and a possible window tint violation, he opened Pollack's car door — with his express consent — to check the window tint. When he did so, both he and Trooper VanScoten detected the odor of unburned marijuana. And according to Trooper Turner, he had been trained to detect the smell of marijuana in both its burned and unburned forms.

As Judge Barnes, now Chief Judge Barnes, explained in her special concurrence in *King v. State*,[16] Turner's insistence that he was able — as soon as he opened the driver's door of Pollack's vehicle — to smell raw marijuana wrapped in sealed plastic bags inside a zipped nylon bag and a rubber container inside a closed trunk strains credulity, to say the least.[17] Nevertheless, the trial court chose to believe Trooper Turner's testimony, which it was authorized to do. On a motion to suppress, the "[c]redibility of witnesses, resolution of any conflict or inconsistency, and weight to be accorded testimony are solely the province of the judge."[18] Therefore, we must defer to the trial court on this issue.[19] And, based on the officers' detection of the marijuana odor, the police "had reasonable, articulable suspicion . . . to detain [Pollack] to investigate whether he was . . . in possession of marijuana."[20]

(b) Pollack also maintains that his 43-minute detention while the police waited for the drug detection dog to arrive was unreason-

---

[15] *Tanner v. State*, 281 Ga. App. 101, 103 (1) (635 SE2d 388) (2006).

[16] 267 Ga. App. 546 (600 SE2d 647) (2004) (physical precedent only).

[17] See id. at 548-549.

[18] (Citation and punctuation omitted.) *Reese v. State*, 252 Ga. App. 650, 651 (1) (556 SE2d 150) (2001).

[19] See *Wright*, supra at 428; *King*, supra at 548; *Reese*, supra; *Taylor v. State*, 230 Ga. App. 749, 751 (1) (c) (498 SE2d 113) (1998).

[20] *Cole v. State*, 254 Ga. App. 424 (1) (562 SE2d 720) (2002).

able and mandated suppression of the evidence. In considering whether the length of a detention was reasonable, "it is appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant."[21]

Here, where both troopers smelled marijuana in the vehicle driven by Pollack, who admitted that he was on parole, the trial court was authorized to conclude that the 43-minute detention while the police waited for the K-9 unit to arrive was not unreasonable.[22]

Pollack's reliance upon *Montero v. State*[23] is misplaced, as it is factually distinguishable. In that case, the police stopped Montero based upon a window tint violation. The officer interrogated Montero and asked for consent to search his vehicle, and Montero agreed. Pursuant to the consent, the officer searched the interior of the car and then the trunk, where he found a large cardboard box which was taped shut. Montero then refused to allow the police to search the box, and the officer summoned a K-9 unit, approximately 35 minutes after the initial traffic stop. The drug detection dog arrived 20 minutes later and indicated the presence of marijuana in the box. We reversed the trial court's denial of Montero's motion to suppress, concluding that the officer lacked a reasonable suspicion of criminal activity.[24] In contrast, in the instant case, both officers specifically detected the odor of marijuana emanating from Pollack's vehicle. Thus, *Montero* is inapplicable to this case.

4. Finally, Pollack maintains that the police did not have a valid legal basis for searching his trunk.

The drug detection dog called to the scene alerted on the front passenger door and then, once inside the vehicle, alerted to the front dash. The police did not find any narcotics in those areas, and the dog did not alert on the trunk area. Thus, Pollack contends, the officers "did not have probable cause to search any areas beyond the front portion of the vehicle where the dog alerted." We disagree. Here, given that the police detected the odor of marijuana in the automobile and the drug dog alerted both outside and inside the vehicle, we

---

[21] (Punctuation omitted.) *Mallarino v. State*, 190 Ga. App. 398, 401-402 (2) (379 SE2d 210) (1989). See *United States v. Sharpe*, 470 U. S. 675, 682 (105 SC 1568, 84 LE2d 605) (1985).

[22] See *Tanner*, supra at 102-104 (1) (affirming denial of motion to suppress where officer detained defendant for 40 minutes while waiting for a drug detection dog to arrive and to confirm defendant's license plate and that the rental vehicle he was driving was not stolen); *Mallarino*, supra (detention of 33 minutes duration until defendant gave consent to search and approximately 90 minutes until defendant was taken into custody was not unreasonable where defendant had committed a traffic violation, the passenger admitted he was in the country illegally, and the two gave contradictory statements).

[23] 245 Ga. App. 181 (537 SE2d 429) (2000).

[24] See id. at 184.

affirm the trial court's conclusion that the officers had probable cause to believe that they would find narcotics in the vehicle and were authorized to conduct a search of the trunk.[25]

Pollack also argues that the police lacked a sufficient basis to search the vehicle because the evidence established that the K-9 dog was not reliable.

> Evidence that [a] dog has been trained and certified as a drug detection dog constitutes prima facie evidence of its reliability for purposes of a probable cause determination. Although a defendant may try to attack the dog's reliability by showing that it was not properly trained or that it has been unreliable in the past, such evidence presents an issue of fact for the trial court, and its decision must be accepted on appeal unless clearly erroneous.[26]

Here, the K-9 handler conceded that the dog that searched Pollack's vehicle had "made a mistake on occasion." However, the handler also testified that the dog was certified through the National Narcotics Detection Dog Association and Law Enforcement Training Specialist and he was trained in detecting marijuana, cocaine, methamphetamine, heroin, and narcotics derivatives. According to the handler, the police ultimately found drugs the "vast majority of the time" the dog gave a positive alert for the presence of narcotics. Given this evidence, the trial court did not err in denying Pollack's motion to suppress based on his argument that the drug detection dog was unreliable.[27]

*Judgment affirmed. Andrews, J., concurs. Bernes, J., concurs in the judgment only.*

DECIDED NOVEMBER 5, 2008.

*Berry & Reynolds, D. Victor Reynolds, Mitchell D. Durham,* for appellant.

---

[25] See *Perry*, supra at 552-553 (officer's search of the defendant's trunk authorized after drug dog alerted on the car's door handle).

[26] *Warren v. State*, 254 Ga. App. 52, 56 (2) (561 SE2d 190) (2002).

[27] See id.

*Patrick H. Head, District Attorney, John R. Edwards, Assistant District Attorney*, for appellee.