**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 16, 2013**

# In the Court of Appeals of Georgia

A13A0200, A13A0201. NASH v. THE STATE; DAVIS v. THE STATE.

BARNES, Presiding Judge.

After the traffic stop of the vehicle in which they were passengers, Kashif Nash and Antoine Davis were indicted on charges of possession of marijuana (Nash and Davis), and possession of cocaine with intent to distribute and trafficking in methamphetamine (Davis). Nash and Davis filed interlocutory appeals from the trial court's denial of their motions to suppress evidence obtained as a result of the traffic stop. The appeals – Case No. A13A0200 and Case No. A13A0201– have been consolidated for purposes of our review. For the reasons discussed below, we reverse.

At a hearing on a motion to suppress, "the trial judge sits as the trier of fact." *State v. Hamby*, 317 Ga. App. 480, 481 (731 SE2d 374) (2012). When this Court reviews the grant or denial of a motion to suppress, we construe the evidence "most favorably to uphold the findings and judgment of the trial court, and that court's findings as to disputed facts and credibility must be adopted unless clearly erroneous.*"* Id. Upon our review, however, we owe "no deference to the trial court's

conclusions of law" and are instead "free to apply anew the legal principles to the facts."(Punctuation omitted). *Martin v. State*, 316 Ga. App. 220, 220 (729 SE2d 437) (2012).

So viewed, the evidence adduced at the hearing on the motion to suppress shows that an officer with the Gwinnett County Police Department initiated the stop of a vehicle after observing what appeared to be a window tint violation. As the officer approached the vehicle, which had a South Carolina license plate, he noticed an air freshener hanging from a rear driver side handle, and noticed an overwhelming odor of air freshener when the passenger let down the window. The officer also observed that there were three additional "air fresheners that were shaped like trees" and clip-on "air freshener[s] in every single one of the vents and the dash."

In addition to the driver, there were two other individuals in the vehicle – Nash, who was the front seat passenger and Davis, who was seated in the back. The officer took the driver of the vehicle back to his patrol car while he verified his driver's license and the vehicle's registration.[1] Nash and Davis remained in the vehicle, which was registered to Nash's mother. The driver told the officer that Nash was the owner

---

[1] James Nash, the driver, was also indicted for possession of marijuana and possession of cocaine with the intent to distribute.

of the car, that Nash and Davis were his cousins, and that he was visiting family in Atlanta, although the driver subsequently told the officer that he was visiting family in Buford but that he also had family in Atlanta. The officer testified that the driver "wasn't able to give [him] an exact location in the Atlanta area."

The officer then tested the window tint and, after determining that tint level did not comply with the "thirty two percent that the law states in Georgia," informed Nash that he needed to remove or redo the tint to make sure that it was compliant with South Carolina law. The officer also asked Nash where the men were coming from and if they were related, and Nash told him that the driver was his cousin but that Davis was a friend. The officer testified that Davis "chimed in" that the men had "visit[ed] his people down in Atlanta."

The officer testified that after he went to the window to measure the window tint, he radioed for officer assistance because he had become suspicious of criminal activity because of the air fresheners and conflicting stories. The second officer arrived less than 10 minutes after the radioed request, at about 20 minutes into the stop. The officer wrote the driver a warning citation, which the driver signed. He then counseled the driver about the citation, returned the driver's license and gave him a copy of the citation, but not the registration. The officer then asked the driver if "there

3

was anything illegal inside the vehicle, specifically marijuana, cocaine, methamphetamine, or ecstasy." The driver responded that there was not. The officer testified that he asked about the contraband because air fresheners are "commonly used as masking agents," and because of the conflicting stories about who and where they were visiting, and their relationship.

The officer went back to the vehicle to give the registration to Nash and also asked him if "marijuana, cocaine, methamphetamine, [or] ecstacy" were present in the vehicle. The officer testified that he knew that the driver could not consent to a search of the car, so he had gone back to the car to get consent from Nash to search. Nash refused. The officer testified that he had to ask him for consent to search twice because when Nash first refused consent he mumbled and "would not make eye contact with [the officer] and he mumbled his response." The officer also noted that Nash appeared nervous, and that he was surprised that the nervousness had not subsided after Nash had been told "he was getting a [warning.]"

The officer then radioed for a K-9 unit to be dispatched to the location. The K-9 officer testified that his unit was about 25 to 27 miles away when they received the dispatch and that it had taken "twenty minutes, give or take" to respond. After a free air search around the vehicle, the K-9 unit dog alerted on the trunk of the vehicle.

4

Upon searching the trunk, the officers recovered a gallon size freezer bag containing marijuana weighing one pound. At the jail, police also recovered two small bags of marijuana and 100 ecstacy pills from Davis' person. Police also retrieved cocaine from under the back seat of the patrol car that transported Davis.

Davis testified at the hearing on the motions that he sat in the first officer's patrol car for approximately 45 minutes after the window tint investigation concluded, waiting for the K-9 unit to arrive. He also testified that the two officers searched under the seat and in the glove compartment before the K-9 unit arrived.

After the driver, Nash and Davis were indicted on charges related to the discovery of the drugs, the men moved to suppress evidence of the drugs, essentially arguing that there was no reasonable articulable suspicion of criminal activity to justify their continued detention once the officer wrote the warning for the window tint. After a hearing, the trial court denied the motions, but issued a certificate of immediate review.

In denying the motions, the court found that the officer "had sufficient information to justify a continued detention for the purpose of investigating his suspicion that there were illegal drugs in the vehicle." The trial court further found that while the presence of air fresheners and conflicting stories about the men's travel

5

destination and relationships "may not each be sufficient standing alone to justify a continued detention . . . based on the totality of the particular facts in this case, [the officer] had sufficient articulable suspicion to justify a continued detention for the few extra minutes its took the K-9 officer to arrive." The trial court found that the K-9 officer arrived on the scene within "30-45 minutes of the initial stop of the vehicle."

On appeal, Nash and Davis essentially contend that the trial court erred in denying their motions to suppress because of the lengthy detention after the traffic stop was complete, and because the extended detention was not supported by reasonable articulable suspicion. .

We first consider the reasonableness of the length of the detention. Upon this Court's review, "it is appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." (Punctuation and footnote omitted.) *Pollack v. State*, 294 Ga. App. 400, 404 (3) (b) (670 SE2d 165) (2008) (physical precedent.)

> A reasonable time to conduct a traffic stop includes the time necessary to verify the driver's license, insurance, registration, and to complete any paperwork connected with the citation or a written warning. A reasonable time also includes the time necessary to run a

6

computer check to determine whether there are any outstanding arrest warrants for the driver or the passengers.

(Citation and punctuation omitted.) *Sommese v. State*, 299 Ga. App. 664, 669 (1) (b) (683 SE2d 642) (2009).

Here, while the officer was completing his investigation of the window tint, he questioned the driver about his destination and relationship with Nash and Davis, and also questioned Nash regarding the same matters when he returned to the vehicle to get the reading on the window tint. This questioning did not unreasonably expand the scope or duration of the stop. See *State v. Davis*, 283 Ga. App. 200, 203 (2) (641 SE2d 205) (2007) (while carrying out these tasks, an officer may ask the driver questions wholly unrelated to the traffic stop or otherwise engage in "small talk" with the driver, "so long as the questioning does not prolong the stop beyond the time reasonably required to complete the purpose of the traffic stop.")

Moreover,

[a]n officer may order a free-air search of the area surrounding the vehicle by a trained canine without implicating the Fourth Amendment, if the same is performed without unreasonably extending the stop. As with any Fourth Amendment analysis, the touchstone of our inquiry is the reasonableness of the officer's conduct, which is measured in objective terms by examining the totality of the circumstances.

7

*Young v. State*, 310 Ga. App. 270, 273 (712 SE2d 652) (2011). We have approved brief detentions of fifteen minutes or less to await the arrival of a drug dog when an officer had reasonable suspicion of other criminal activity. See *Richbow v. State*, 293 Ga. App. 556 (667 SE2d 418) (2008) (no constitutional violation occurred when police delayed motorist for "a minute or two" pending drug dog's arrival in light of multiple air fresheners and cell phones in car and driver's nervousness bordering on panic during traffic stop); *Jones v. State*, 259 Ga. App. 849 (578 SE2d 562) (2003) (delay of a few minutes for arrival of K-9 unit was justified because officer saw driver hide something under seat during traffic stop).

Here, the detention was not brief, nor justifiable in its length to confirm or dispel any suspicions of criminal activity quickly. See *Pollack v. State*, 294 Ga. App. at 404 (3) (b). Although there is no bright-line rule for determining when the length of a detention becomes unreasonable, see *Grandberry v. State*, 289 Ga. App. 534, 538 (2) (658 SE2d 161) (2008), here, the officer had concluded the investigation into the window tint and issued the warning citation before he inquired into any other criminal activity and asked for consent to search. He then detained the men an additional 20 minutes to wait for the K-9 unit. See *State v. Thompson*, 256 Ga. App. 188, 189-90 (569 SE2d 254) (2002) (excluding evidence obtained as a result of officer's continued

questioning of defendant after citation had been written and license returned defendant, resulting in a 20-minute delay while waiting for drug dog after traffic stop had concluded).

The officer testified that he had suspected criminal activity much earlier in the stop because of the air fresheners and conflicting stories – which then precipitated his call for officer backup – yet he did not at that time inquire into whether the men had illegal substances in the car, nor did he ask for consent to search, or request the K-9 unit. Instead, the officer continued with the investigation of the window tint violation, and even completed the warning citation and gave the driver back his driver's license. At that point, even though suspicious of criminal activity much earlier in the interaction, he then questioned the men about illegal contraband, asked for consent to search, and requested a K-9 unit that was almost 30 miles away. See e.g. *Weems v. State,* 318 Ga. App. 749, 752 (1) (734 SE2d 749) (2012) (no apparent reason existed to justify the officer's decision to continue to detain defendant, particularly since he had already written defendant a warning citation before he inquired into other criminal activity); Compare *Sommese v. State*, 299 Ga. App. at 669-670 (1) (b) (rejecting appellant's claim that traffic stop was unreasonably prolonged by officer waiting for back-up when officer was otherwise engaged in other tasks and had not

9

yet completed citation paperwork when back-up arrived); *Bowens v. State*, 276 Ga. App. 520, 521-22, n.3 (623 SE2d 677) (2006) (upholding as reasonable free-air search of vehicle conducted while officer awaited results of license check); *Byers v. State*, 272 Ga. App. 664, 665-666 (613 SE2d 193) (2005) (concluding that free-air search conducted while officer was writing traffic citation was lawful and did not expand the scope of the stop).

Thus, under these circumstances, the actions of the officer unreasonably expanded the scope or duration of the traffic stop, and accordingly, because the officer illegally detained Nash and Davis, the order of the trial court is reversed and the case is remanded with direction to grant appellants' motions to suppress.

*Judgment reversed. Doyle, P.J., Miller and McMillian, JJ., concur. Andrews, P.J, Dillard and Ray, JJ., dissent.*

10

A13A0200, A13A0201. NASH v. THE STATE; DAVIS v. THE
  STATE.

RAY, JUDGE, DISSENTING.

This case implicates the delicate balance that must be found between law
enforcement's ability to perform their duties and every citizen's Fourth Amendment
protections against unreasonable search and seizure. The question before the Court
is whether the officer had reasonable suspicion of criminal conduct and could
"prolong a stop" for an additional 20 minutes while waiting for a K-9 free-air search
after the stop's original purpose has been completed. The majority believes the officer
did not have reasonable articulable suspicion to detain the motorists. I disagree.

Under the standard set forth in *Terry v. Ohio*, 392 U. S. 1, 21 (III) (88 SCt
1868, 20 LE2d 889) (1968), a police officer may briefly detain persons "when the
officer has a particularized and objective basis for suspecting the persons are involved
in criminal activity." (Citation and punctuation omitted.) *Minor v. State*, 298 Ga.
App. 391, 395 (1) (b) (690 SE2d 459) (2009). "The officer's action must be justified
by specific and articulable facts which . . . reasonably warrant that intrusion, and the
officer must have some basis from which the court can determine that the detention
was neither arbitrary nor harassing." (Citation and punctuation omitted.) Id.
"Detention beyond that authorized by *Terry* is an arrest, and, to be constitutional,

such an arrest must be supported by probable cause." (Citation and punctuation omitted.) Id.

> An officer must have reasonable suspicion of criminal conduct before conducting additional questioning and searching a vehicle once a normal traffic stop has ended and the officer has told the motorists they are free to go. To meet the reasonable suspicion standard, an officer's investigation during a traffic stop must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. Although this suspicion need not meet the standard of probable cause, it must be more than mere caprice or a hunch or an inclination.

(Footnote omitted.) *Pollack v. State*, 294 Ga. App. 400, 403 (3) (670 SE2d 165) (2008). This Court has further defined "specific articulable facts" instructing "that the totality of the circumstances - the whole picture - must be taken into account." (footnote omitted.) *State v. Ledford*, 247 Ga. App. 412, 415 (1) (b) (543 SE2d 107) (2000). This "whole picture" includes "consideration of the modes or patterns of operation of certain kinds of lawbreakers". (Footnote omitted.) Id.

When the officer decided to call for the K-9 unit and prolong the stop, he knew that: (1) the Dodge Charger's windows were tinted past the legal level (and that often tinted windows are used to disguise criminal activity); (2) the car had an "overwhelming odor" of air freshener and was equipped with an abnormally large

2

quantity of air fresheners (and that air fresheners are often used to disguise the smell of narcotics); (3) the three motorists gave inconsistent accounts of their itinerary, could not name the family members that they had allegedly just visited, or where within Atlanta they had visited; (4) the driver became more nervous, rather than less nervous, when he received a warning rather than a violation, which coincided with the officer asking him if any drugs were inside the vehicle; and (5) the car owner would not make eye contact with the officer, first mumbling his initial response and then stating "I don't want you to search my shit" when the officer asked to search the vehicle.   I agree with the trial court that

> [w]hile conflicting accounts of their relationship and their travel destinations, or the overwhelming air fresheners may not each be sufficient standing alone to justify a continued detention . . . based on the totality of the particular facts in this case, [the officer] had sufficient articulable suspicion to justify a continued detention for the few extra minutes it took the K-9 officer to arrive.

We have previously found that nervousness, a strong scent of several air fresheners, erratic driving, traveling a known drug route, and passengers' conflicting statements as to their itinerary proved sufficient to detain the motorists for thirty minutes for a canine unit to arrive. *Jones v. State*, 253 Ga. App. 870, 871-873 (560 SE2d 749)

3

(2002). Further, we have held that increasing nervousness, multiple cell phones within the vehicle, and a strong odor of air freshener, plus two visible air fresheners proved sufficient. *Richbow v. State*, 293 Ga. App. 556, 556-559 (667 SE2d 418) (2008). Compare *Migliore v. State*, 240 Ga. App. 783, 786 (525 SE2d 166) (1999) (Nervousness, conflicting explanations for the purpose of their trip, and other meaningless inconsistencies provided insufficient basis to extend a traffic stop).

We weigh heavily the "specific reasonable inferences which [an officer] is entitled to draw from the facts in light of his experience." (Citation omitted.) *Terry*, supra at 27 (III). The motorists' incongruous stories, forgetting family members' names, overly tinted windows, a strong odor of air freshener coming from an unusual number of devices, and increased nervousness all amount, in my opinion, to evidence sufficient to justify further detaining the motorists.

Further, "[i]n considering whether the length of a detention was reasonable, it is appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." (Punctuation and footnote omitted.) *Pollack*, supra at 404 (3) (b). The officer in this case attempted to expediently confirm or dispel his suspicions when he first asked to search the vehicle

4

for drugs. When the car owner declined his request, the officer did not yet have probable cause to search the car; therefore, a free-air search became the next prong of investigation, and he promptly called for a K-9 unit. "The dog's reaction would either confirm or fail to confirm the officer's belief that [the motorist] possessed drugs in the car trunk. In the event of the latter, [the motorist] would be free to leave. In the event of the former, probable cause for the search would exist . . ." *Schmidt v. State*, 188 Ga. App. 85, 88-89 (372 SE2d 440) (1988) (*Beasley, J., concurring specially)*.

This Court in *Schmidt* found that an additional thirty-minute, one hour total wait for a K-9 unit to arrive after the driver already received a warning and the return of his driver's license constituted an arrest. *Schmidt*, supra at 87. However, in *Pollack*, the officers detained a motorist for a total of 43 minutes while the police waited for the K-9 unit to arrive, an amount of time this Court found reasonable given that the officers smelled marijuana in the vehicle and the driver admitted he was on parole. *Pollack*, supra at 401. In the present case, the trial court found that the K-9

unit arrived on the scene between 30 and 45 minutes after the initial stop, indicating an equal or lesser detention than the motorist in *Pollack*.[1]

Because the "totality of the circumstances" test evaluates the strength of the evidence in conjunction with the length of continued detention in determining the detention's appropriateness, the case sub judice is distinguishable from *State v. Thompson*, 256 Ga. App. 188 (569 SE2d 254) (2002), which the majority cites for support. In *Thompson*, the only indicia of suspicion included a "real strong" odor of detergent or air freshener, although no detergents or fresheners were observed in the car, and the driver's unusual nervousness; we found this insufficient to warrant a 20-minute wait for a K-9 unit. Id at 188-189. The officer in the present case experienced much more convincing warning signs than the officer in *Thompson*, resulting in a methodical and reasonable investigation by the police officer and a brief detention.

As I find that the trial court correctly concluded that this 20-minute additional delay was justified, given the officer's reasonable suspicion, I hereby respectfully dissent.

---

[1] The amount of time which elapsed after the warning was issued until the dog arrived was only "twenty minutes, give or take."

I am authorized to state that Presiding Judge Andrews, Judge Dillard and Judge Ray join in this dissent.