McFADDEN, Presiding Judge,
concurring specially
The 20 to 25 air fresheners that were in use in Taylor’s car are strong evidence, for which there is no likely innocent explanation. Cf. State v. Thompson, 256 Ga. App. 188, 190 (569 SE2d 254) (2002) (“Although laundry detergent and dryer sheets can be used to mask the odor of an illegal substance, they are themselves legal substances that can be used for a legal purpose and thus do not justify the officer’s further detention of Thompson under the facts of this case.”). That evidence is bolstered by the evidence that the stop took place on a known drug route and by the trial court’s written finding, which the evidence supports, that Taylor’s hands were shaking when the deputy stopped him, even though the trial court characterized that evidence as “relatively insignificant” when he announced his ruling at the end of the suppression hearing. Those items are sufficient on the facts of this case to sustain a finding of reasonable suspicion.
*820 Decided September 14, 2017
D. Lynn Bearden, for appellant.
Rosemary M. Greene, District Attorney, ErleJ. Newton III, Assistant District Attorney, for appellee.
So I would not reach the question whether Taylor’s vague and conflicting statements about his uncle’s illness and his own whereabouts the night before constitute meaningful inconsistencies. See Nash v. State, 323 Ga. App. 438, 443 (746 SE2d 918) (2013); Migliore v. State of Ga., 240 Ga. App. 783, 786 (525 SE2d 166) (1999).
And I would avoid any suggestion that we defer to officers’ training and experience when we perform the analysis required of us by the Fourth Amendment. In the first place, the case would not be here if drugs had not been found. I do not doubt that such training and experience enable officers to make determinations that other persons, including judges, could not make — such as determinations about “drug smuggling patterns, combined with . . . objective observations indicating criminal activity in accordance with those patterns!)]” Giles v. State, 284 Ga. App. 1, 4 (1) (642 SE2d 921) (2007). And I do not doubt that those determinations, even about matters difficult or impossible to explain to a layperson, such as the difference between guilty and innocent nervousness, are often sound. But in order to protect what the Fourth Amendment calls upon us to protect, we must limit our analysis to what can be explained in words.