**FIRST DIVISION**
**BROWN, C. J.,**
**BARNES, P. J., and WATKINS, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 9, 2026**

# In the Court of Appeals of Georgia

A25A2106. PETINO v. THE STATE.

WATKINS, Judge.

Elizabeth Petino appeals from the trial court's order denying her motion to suppress evidence found during a traffic stop that Petino contends was unlawfully prolonged. For the reasons discussed below, we reverse.

When reviewing a trial court's ruling on a motion to suppress, an appellate court must construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court. In conducting its review, an appellate court generally must limit its consideration of the disputed facts to those expressly found by the trial court. An appellate court may, however, consider facts that definitively can be ascertained exclusively by reference to evidence that is

uncontradicted and presents no questions of credibility, such as facts indisputably discernible from a videotape.[1]

Importantly, although the question of whether a traffic stop was unreasonably prolonged is often a fact-intensive determination, "it is ultimately a holding of constitutional law that we review de novo."[2]

Viewed in this light, the evidence at the suppression hearing, which included testimony from the officer who stopped Petino and footage of the traffic stop as recorded by the officer's body camera, shows the following. On June 20, 2022, Officer Zachary Smith stopped a vehicle on Highway 400 based on expired drive-out tags. The driver, Petino, told Smith she had purchased the car within the last 30 days, and Smith informed her that the deadline to register a vehicle after a private sale was only 7 days. Petino apologized and said she thought the deadline was 30 days. Smith asked Petino if she had been arrested before; Petino said yes but denied that she was on probation or parole. At Smith's request, Petino gave him her driver's license, the bill

---

[1] *McNeil v. State*, 362 Ga. App. 85, 85 (866 SE2d 249) (2021) (citations and punctuation omitted).

[2] *Snellings v. State*, 371 Ga. App. 795, 796 (903 SE2d 177) (2024) (citations and punctuation omitted).

of sale for the vehicle, and the title to the vehicle, but she did not have proof of insurance in the car so she called her ex-husband to try to obtain that.

Smith took Petino's license and paperwork back to his patrol car, where he ran her information and determined that the vehicle was, in fact, insured and that there were no outstanding warrants against her. Smith then wrote a warning for Petino's failure to register the car within seven days. While Smith was in his patrol car, another officer arrived at the scene and spoke with Petino, asking her where she had been and where she was going. Smith exited his car and spoke briefly with the other deputy, who relayed to Smith the answers Petino had given him and commented that Petino was "talkative."

When Smith walked back to Petino's vehicle, Petino was finishing a phone call, and she told Smith that she was trying to get proof of insurance. After Petino ended the call, Smith again informed her that the deadline to register a car after a private sale was 7 days, not 30 days. Notably, Smith did not return Petino's license, title, and documents to her, and he did not inform her that he had already verified insurance coverage for the vehicle. Instead, he asked her about illegal activities and whether there was any contraband in the car. Petino denied any drug use or contraband. Smith

3

then said, "What I'd like to do is have my K-9 partner run around the car[.]" He asked Petino if she was "good with that[,]" and she responded "that's okay, I'm fine." Smith directed Petino to exit the car, and the K-9 officer walked his dog around the vehicle. The dog alerted, and a subsequent search of the vehicle revealed suspected methamphetamine and drug-related objects.

Petino was arrested and charged with possession of a controlled substance and possession of drug-related objects.[3] She filed a motion to suppress the evidence found in the vehicle, arguing that Smith had unlawfully prolonged the traffic stop prior to obtaining her consent for the search. The trial court denied the motion after a hearing. Notably, Smith testified at the hearing that he thought Petino "could have been" under the influence because she was talkative and her eyes were red, but he never told Petino that he was investigating her for DUI and no field sobriety tests were performed. In its order, the trial court found suppression was not warranted because: (1) there was no evidence that Smith deviated from the purpose of the traffic stop to investigate other issues; (2) Petino consented to the open air search; and (3) Petino "was not detained any longer for the open air sniff than she was detained while Smith

---

[3] OCGA §§ 16-13-30 (a), 16-13-32.2 (a).

was awaiting information prior to determining whether to issue warnings." Petino filed an application for interlocutory review of the trial court's order, which we granted. This appeal ensued.

As a threshold matter, we note that Petino does not challenge the validity of the initial traffic stop. She argues only that Smith impermissibly expanded the scope of the stop and that her consent to search was therefore invalid.

"A seizure for a traffic violation justifies a police investigation of that violation."[4] However,

> a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution. A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.[5]

"Because addressing the infraction is the purpose of the stop, it may last no longer than is necessary to effectuate that purpose. Authority for the seizure thus ends when

---

[4] *Rodriguez v. United States*, 575 US 348, 354 (II) (135 SCt 1609, 191 LE2d 492) (2015).

[5] *Terry v. State*, 358 Ga. App. 195, 200 (854 SE2d 366) (2021) (citations and punctuation omitted).

tasks tied to the traffic infraction are — or reasonably should have been — completed."[6]

"[I]f an officer continues to detain an individual after the conclusion of the traffic stop and interrogates [her] or seeks consent to search without reasonable suspicion of criminal activity, the officer has exceeded the scope of a permissible investigation of the initial traffic stop."[7]

To detain a driver after investigation of the traffic violation is complete, an officer must have

> a reasonable, articulable suspicion that the driver was engaged in other illegal activity. And reasonable, articulable suspicion must be based on

---

[6] *Rodriguez*, 575 U.S. at 354 (II) (citations and punctuation omitted).

[7] *Hill v. State*, 360 Ga. App. 683, 690(1) (859 SE2d 891) (2021) (citation and punctuation omitted) (reversing the denial of a motion to suppress because the officer continued to detain the defendant, "asking about the presence of contraband and requesting consent to search the vehicle[,]" after completing the tasks associated with the traffic stop); *Weaver v. State*, 357 Ga. App. 488, 491 (851 SE2d 125) (2020) (reversing the denial of a motion to suppress because "the officer continued to question Weaver and his passenger about multiple subjects unrelated to the purpose of the stop even after receiving an answer from dispatch regarding the legality of Weaver's license and registration. Even if the officer's continued questioning of Weaver and the passenger about the scrap metal did not constitute an unreasonable prolongation of the stop, the officer should have ended the stop after he finished his questions as to that matter.").

more than a subjective, general suspicion or hunch. The detention must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the detention, and the officer must have some basis from which the court can determine that the detention was neither arbitrary nor harassing.[8]

Absent such a basis, even a de minimis extension of the stop violates the Fourth Amendment.[9]

---

[8] *Snellings*, 371 Ga. App. at 799-800 (citations, punctuation, and emphasis omitted). Accord *McNeil*, 362 Ga. App. at 90 ("for the continued detention to pass constitutional muster, the officer must have a reasonable articulable suspicion of other illegal activity") (citation and punctuation omitted).

[9] As we stated in *Hill*,

> The United States Supreme Court has held unequivocally that the Fourth Amendment does not allow even a de minimis extension of a traffic stop beyond the investigation of the circumstances giving rise to the stop. It is the unsupported additional detention, not police questioning, which constitutes the Fourth Amendment violation.

360 Ga. App. at 686(1) (citations and punctuation omitted).

"[W]hether a given set of facts rises to the level of reasonable articulable suspicion of criminal activity is a legal question."[10] And "the State bears the burden of proving that a defendant's consent to search is valid[.]"[11]

Here, the trial court essentially found that the traffic stop was not complete when the open-air search was conducted because Petino had not provided Smith with proof of insurance for the vehicle. But this is incorrect. Although Georgia law generally provides that an owner or operator must maintain proof of insurance in the vehicle whenever that vehicle is in operation, this requirement "shall not apply to the owner or operator of any vehicle for which the records or data base of the Department of Revenue indicates that required minimum insurance coverage is currently effective."[12] Thus, after Smith ascertained through the State's database that Petino's car was insured, her failure to present proof of such insurance provided no legal basis for the continuation of the stop. To the extent the trial court found otherwise, it erred.

---

[10] *Snellings*, 371 Ga. App. at 800 (citation and punctuation omitted).

[11] *Hill*, 360 Ga. App. at 686(1).

[12] OCGA § 40-6-10(a)(3).

Once Smith verified insurance coverage and wrote the warning for failing to register the car, the purpose of the stop was fulfilled. Yet when Smith returned to Petino's car, he did not return her license and paperwork, and he did not hand her the written warning he had already completed. Instead, he began asking her questions about illegal activity and informed her that he would like to have the K-9 walk around the car. As justification for an expanded investigation into other crimes, the only possible reasons identified in the record are that Petino was "talkative" and had red eyes. The State argues that these manifestations created a reasonable articulable suspicion which allowed Smith to detain Petino for an investigation into drug possession. But considering the totality of the circumstances, including Smith's testimony that he did not notice an odor of marijuana or other substances coming from Petino's car and that Petino's "talkative" conduct and red eyes apparently were not alarming enough for either of the officers who spoke with her to initiate field sobriety tests, we are not persuaded that Smith's continued detention of Petino was supported

by reasonable articulable suspicion.[13] Accordingly, we reverse the denial of Petino's motion to suppress the evidence obtained in the search.[14]

*Judgment reversed. Brown, C. J., and Barnes, P. J., concur.*

---

[13] See *Hill*, 360 Ga. App. at 689(1) n.18 ("The only possible reason for suspicion about drug possession given by [the officer] is that [the defendant] was nervous during the stop. But as this Court has explained, mere nervousness is not sufficient to support a reasonable articulable suspicion to extend a stop after completion of the original mission.") (citations and punctuation omitted); *State v. Thompson*, 256 Ga. App. 188, 190 (569 SE2d 254) (2002) (no reasonable articulable suspicion where officer observed that defendant was "extraordinarily nervous" and grew defensive when marijuana was mentioned and defendant's car smelled strongly of laundry detergent or dryer sheets, which can be used to mask the odor of illegal substances).

[14] See *State v. Felton*, 297 Ga. App. 35, 37-38 (676 SE2d 434) (2009) (where a defendant's consent to search is the product of an illegal detention, the consent is not valid and the evidence obtained as a result of the illegal search is subject to suppression).